89 U.S. 341
 22 L.Ed. 877
 22 Wall. 341
 RAILROAD COMPANY
v.
POLLARD.
 October Term, 1874
 
 1
 ERROR to the Circuit Court for the District of New Jersey; the case being thus:
 
 
 2
 By the practice in the courts of New Jersey, after a plaintiff rests his case, the defendant may move for a nonsuit; and if the court refuses to grant one, a bill of exceptions may be asked for, and on writ of error brought, the plaintiff in error may assign for error the refusal to grant the nonsuit.
 
 
 3
 By an act of Congress, approved June 1st, 1872,[1] it is enacted,
 
 
 4
 'That the practice . . . and forms, and modes of proceeding, &c., in the Circuit . . . Courts of the United States shall conform as near as may be to the practice . . . and forms and modes of proceeding existing at the time in like cases, in the courts of record of the State within which such Circuit . . . Courts are held.'
 
 
 5
 In this state of the law, in June, 1871, Mrs. Pollard, a resident of Chicago, had taken passage by railroad, on a connecting line of roads, one of which was owned by the New Jersey Railroad Company (the defendant in this case), for herself, her two sisters, and her own daughter, a child of about thirteen years old, from Chicago vi a Philadelphia to New York; the purpose of the journey being refreshment in the summer and general improvement to health. The travelling party were in a Pullman palace car, and occupied what is known as a 'section' of it. This section was near the middle of the last car of the train where it was used for travelling and not for sleeping. It had two double seats, one at each end of the section, facing each other, so that persons who occupied the seat nearest the forward part of the car had to ride with their backs to the engine.
 
 
 6
 On the arrival of the party at Philadelphia, the train was composed of five passenger cars and a baggage car. But it being now the season of fruit, five fruit cars were added to the train before setting off for New York; these being put on to it between the locomotive and the passenger train. The train thus made up had in it eleven cars. Some freight cars were added afterwards.
 
 
 7
 Continuing their journey towards New York by night, when the train came within about thirty miles of the last-named city, or rather of Jersey City just opposite to it—it being now half-past five o'clock in the morning—the servant in charge of the Pullman cars aroused the passengers in them, informing them that they were reaching the end of their journey. Mrs. Pollard got up, and having with no unreasonable delay as it seemed dressed herself and her child, began to arrange the child's hair, brushing and plaiting it. She was standing in the section which her travelling party had occupied, with her back to the seat in which she had been sitting, and so looking towards the rear of the cars, the child standing before her. During this operation of arranging the child's hair, and when within about one hundred yards of the depot at Jersey City, the whole train was switched off upon a siding. The four passenger cars and the baggage car were detached or uncoupled from the fruit and freight cars, were attached by the drill-master to his engine, taken back over the same road beyond the switch, which was then adjusted to allow the cars to enter the passenger depot, and were then backed into the usual landing-place for the passengers. In this operation and just as the train was about to stop—the cars moving very slowly, so much so that some passengers at the moment were getting out of them on to the platform—one car bumped against another with a certain degree of force, and Mrs. Pollard was in some way thrown against the arm of the seat in which she had been sitting, striking, as testimony tended to prove must have been the case, the lower part of her spinal cord; a part of it which, as is known to medical men and surgeons, is very susceptible to anything like a blow, and which,—especially in case of women,—it is dangerous to fall upon. Mrs. Pollard was rendered quite unconscious by the blow, and the train being now completely stopped, she was carried by four men into a hotel near the station, where medical aid was soon obtained. Having been finally conveyed to her home in Chicago, it was soon found that the whole region about the lower part of the lumbar vertebrae and the sacrum was much injured, and that partial paralysis of the lower limbs was supervening. This went on, and power of locomotion, of course, was ultimately much impaired. Mrs. Pollard accordingly brought suit—the suit below—against the New Jersey Railroad Company, on whose road the accident occurred.
 
 
 8
 On the trial the conductor of the car testified that Mrs. Pollard 'told the doctor at Jersey City that she had a weak back;' and the porter of the car testified, that at the same place he 'heard her tell one of her sisters who had been travelling with her that she was sorry for the accident, because she was on her way for health; that her back had never been strong.' These statements, however, were denied by Mrs. Pollard and the sister.
 
 
 9
 There was testimony offered by the railroad company which tended to show that on all their cars they used the best sort of 'buffers' to deaden the concussions which are unavoidably incident to stopping a train of cars; that the bumping in this case was not greater than what is usual in coming to a stand in the station-house; and that by some persons it had not been even observed.
 
 
 10
 On the other hand, testimony was given to show that the company did not use the buffers known as Miller's, which the plaintiff alleged was the best sort to deaden the concussion, and testimony tending to show also that in the present case the jar had been unusual and violent.
 
 
 11
 One of the witnesses by whom the plaintiff's case was sought to be made out was herself. She had been examined de bene esse in Chicago and her evidence, thus given, was read on the trial of the case at Trenton, New Jersey, she being at the time in Chicago, Illinois, and unable to travel.
 
 
 12
 This deposition was offered and received in pursuance of section 858 of the Revised Statutes of the United States, which enact as follows:
 
 
 13
 'In the courts of the United States, no witness shall be excluded in . . . any civil action because he is a party to or interested in the issue tried.'
 
 
 14
 The same section, after excepting the cases of actions by or against executors, administrators, or guardians, continues:
 
 
 15
 'In all other respects, the laws of the State in which the court is held, shall be the rules of decision as to the competency of witnesses in the courts of the United States in trials at common law, and in equity and admiralty.'
 
 
 16
 The reading of the deposition was opposed by the defendants, on the ground that it was not lawful, either by the acts of Congress or by the acts of the legislature of New Jersey, to use in evidence the deposition of a party, and because, as the defendants insisted, the testimony of the plaintiff, she being a party to the cause, could only be taken in the presence of the court and jury.
 
 
 17
 On its admission by the court, an exception was accordingly sealed.
 
 
 18
 The plaintiff having rested her case the defendant moved for a nonsuit, on the ground that there was such contributory negligence on the part of Mrs. Pollard, as shown by her standing in the car, her position and occupation at the time of the accident, as would prevent a recovery; and that there was no such negligence shown on the part of the defendant as would warrant the case to be submitted to a jury. The court refused a nonsuit.
 
 
 19
 This refusal was the subject of another exception.
 
 
 20
 The evidence being concluded, the plaintiff's counsel requested the court to charge——'That while the plaintiff was bound to satisfy the jury that the injury was caused by the negligence of the defendants, if from the evidence the jury were satisfied that the injury was occasioned while Mrs. Pollard was a passenger on defendants' road, and that she was in the exercise of ordinary care, namely, that degree of care which may be reasonably expected from a person in her situation, this would be prim a facie or presumptive evidence of the defendants' liability; and that the plaintiff would not be required to show by what particular acts of misconduct or negligence on the part of the defendants the injury was occasioned.'
 
 
 21
 The court charged that the law, as decided by this court in Stokes v. Saltonstall, reported in 13th Peters,[2] was in accordance with what the request thus made assumed it to be. But told the jury also, to be careful not to consider any presumption against the defendant, until they were satisfied by affirmative proof on the part of the plaintiff that Mrs. Pollard was in the exercise of reasonable care and caution when the injury was sustained.
 
 
 22
 The defendants' counsel asked the court to charge——
 
 
 23
 '1st. That the facts of the case were not of that character which would warrant on the part of the jury an inference that the defendants were guilty of a want of care and skill; and that the jury must look to affirmative proof of want of care and skill in coming to a verdict.
 
 
 24
 '2d. That the facts were not such as to warrant the conclusion that there was a want of care on the part of the defendants.'
 
 
 25
 The court declined to give either one of these instructions; assigning as the ground of refusal that in the present case the facts were not clear and uncontradicted, and that it was only when they were that the court could direct the jury as to the inferences which the law drew from them.
 
 
 26
 The same counsel further asked the court to charge:
 
 
 27
 '3d. If, under all the facts of this case, the jury are unable to find how or in what manner the injury was caused, then that there would not be sufficient proof of negligence or want of skill on the part of the defendants as to enable the plaintiff to recover.'
 
 
 28
 The court, in reply to this request, charged as follows:
 
 
 29
 'If this prayer means that the jury has no right, from the facts and circumstances proved, to infer negligence or want of skill and care on the part of the defendants, unless they are able to find how and in what manner the injury was caused, it is not a proper request in the present case, and I decline to charge the jury in accordance with it. There is no controversy but that the injury was the result of the fall of the plaintiff against the arm of the seat in the car, and the charge already given covers the extent of the responsibility of the defendants, and under what circumstances the law holds them liable in damages.'
 
 
 30
 The same counsel further asked the court to charge:
 
 
 31
 'If the jury find from the facts of the case that both parties were negligent, there can be no recovery.'
 
 
 32
 The court, in reply to this request, charged as follows:
 
 
 33
 'This prayer is correct, with this qualification, provided that the jury are of the opinion that the negligence of the plaintiff was of such a character as to contribute to the injury, and that such injury would not have resulted if she had not been guilty of negligence.'
 
 
 34
 The jury having given a verdict in the sum of $8000 for the plaintiff, and judgment being entered accordingly, the case was brought here on the refusal to nonsuit, on the admission of Mrs. Pollard's deposition, on the charge as given, and on the refusals to charge as requested.
 
 
 35
 
 Mr. J. W. Scudder, for the railroad company, plaintiff in error:
 
 
 
 36
 1. The plaintiff should have been nonsuited. The accident was an ordinary incident of railroad travel. There was nothing unusual in the motion of the cars. Mrs. Pollard should not have been standing up at the moment of bringing the train to, plaiting her child's hair. If she chose to be then so engaged she should have been seated. A jar in the moment of coming to almost always happens. Persons should not be in a position in which, when it occurs, they will probably be injured. We assume that in any court of New Jersey the plaintiff would have been nonsuited. The act of Congress of June 1st, 1872, made it obligatory on the Circuit Court to follow the same practice and mode of proceeding.
 
 
 37
 2. The charge given, with a slight addition by way of qualification, in conformity with the plaintiff's request, while it conformed to what was said many years ago by this court, in Stokes v. Saltonstall, does not entirely conform with what has received the sanction of later cases in this court, and in cases elsewhere in courts of first authority.[3] The later cases go to say more distinctly than does that case, that in suits against common carriers the negligence of the defendant cannot be presumed by reason of the proper care on the part of the plaintiff. There must be positive proof on the part of the plaintiff of the negligence of the defendant.
 
 
 38
 3. As to the prayers of the defendants. The first and second were sound propositions as applicable to the case. They were not designed, as the court erroneously supposed, to withdraw the case from the determination of the jury; but to have the court state to the jury that they must not be controlled by inference, but must rely only on facts affirmatively proved.
 
 
 39
 The third prayer was certainly reasonable. The whole journey was one for the improvement of health. Two witnesses swore that Mrs. Pollard had said she had a weak back; a spinal disease, probably. It was really doubtful whether this fall in the car produced the ultimate paralysis. In view of these facts the request was proper to be made.
 
 
 40
 So as to what the court said in reply to the defendants' request to charge as to contributory negligence; a matter which, in truth, was involved in the motion to nonsuit. Mrs. Pollard was aware of the approach to the depot; she had been told to get ready to leave the car; she knew, or ought to have known, that, at the terminus of a road, trains are stopped and started again, frequently before the passengers can get out at the place of departure; and if, under such circumstances, she placed her child before her and used both of her hands in combing the child's hair, so that she could not readily obtain support when a change in the motion of the train took place, the position in which she placed herself was the cause of the injury. If such position materially contributed to the injury it would be contributory negligence, and she could not recover.[4]
 
 
 41
 As to the admission of Mrs. Pollard's deposition. [The counsel here conceding that a party to a case might testify orally, went into a critical examination of various statutes of the United States, and of New Jersey, to show that he could not testify by deposition taken de bene esse.]
 
 
 42
 Mr. A. A. Abbott, contra, argued that no one of the matters assigned for error presented fair ground, even for question.
 
 
 43
 It is settled in the Federal courts that a plaintiff cannot be nonsuited against his will if he has given any evidence to sustain his case;[5] and such evidence was given here.
 
 
 44
 Stokes v. Saltonstall was a solemn decision, never seriously brought into question.
 
 
 45
 The requests made by the defendants for charges would have wrested questions of fact from the jury.
 
 
 46
 Texas v. Chiles[6] has opened the door to parties testifying in a case as wide as it previously was to disinterested witnesses.
 
 
 47
 We ask that the judgment should be affirmed, with damages at the rate of ten per cent. in addition to interest, in accordance with Rule 23 of the court.
 
 
 48
 The CHIEF JUSTICE delivered the opinion of the court.
 
 
 49
 It is unnecessary to decide in this case, whether the act of June 1st, 1872, by which the practice, pleadings, forms, and modes of proceedings, &c., in the Circuit and District Courts of the United States are made to conform as near as may be to the practice, pleadings, forms, and modes of proceedings in the courts of the States, gives to the Circuit Courts the power to order a nonsuit against the will of the plaintiff in States where that power exists in the State courts, because, upon an examination of the record, we are all of the opinion that the evidence submitted by the plaintiff was sufficient to justify the court in leaving the case to the jury.
 
 
 50
 It is conceded that the part of the charge to the jury excepted to, is fully sustained by the decision of this court in Stokes v. Saltonstall. We see no necessity for reconsidering that case.
 
 
 51
 There was no error in the refusal of the court to charge the jury as requested by the defendants. Each request involved the determination of a question of fact by the court, where there was, to say the least, a conflict of evidence.
 
 
 52
 We have decided at the present term, in Texas v. Chiles,[7] that in the courts of the United States parties to a suit are by acts of Congress put upon a footing of equality with other witnesses and are 'admissible to testify for themselves and compellable to testify for the others.'
 
 
 53
 This disposes of all the errors assigned in this case.
 
 
 54
 JUDGMENT AFFIRMED.
 
 
 55
 N. B. No punitive damages were given.
 
 
 
 [1]
 Revised Statutes of the United States, § 914.
 
 
 [2]
 Page 181.
 
 
 [3]
 Parrott v. Wells, 15 Wallace, 524; Transportation Co. v. Downer, 11 Id. 134; Tourtelott v. Rosebrook, 11 Metcalf, 460; Robinson v. Fitchburg and Worcester Railroad, 7 Gray, 97; Hammack v. White, 11 Common Bench, New Series, 588 (103 English Common Law); Curtis v. Rochester and Syracuse Railroad Co., 18 New York, 543 (4 Smith).
 
 
 [4]
 Moore v. The Central Railroad Co., 4 Zabriskie, 268; Runyon v. The Central Railroad, 1 Dutcher, 558; Telfer v. The Northern Railroad Co., 1 Vroom, 191; Willett's Administrator v. The Buffalo and Rochester Railroad Co., 14 Barbour, 585, 589; Winship v. Enfield, 42 New Hampshire, 197.
 
 
 [5]
 Elmore v. Grymes et al., 1 Peters, 469; D'Wolf v. Rabaud, Ib. 476 Crane v. Morris's Lessee, 6 Id. 598.
 
 
 [6]
 21 Wallace, 488.
 
 
 [7]
 21 Wallace, 488.