## THE METROPOLITAN RAILROAD COMPANY

*v.*

## FALVEY.

COMMON CARRIERS OF PASSENGERS; NEGLIGENCE; QUESTIONS OF FACT; INFANTS, DEGREE OF CAUTION REQUIRED OF.

1. A common carrier of passengers for hire is required to exercise the greatest care and precaution against the occurrence of accidents, and to provide cars which will be safe not only for the transportation of adults but of infants as well.
2. Whether the structure of a car from which an infant fell and was injured was entirely safe for the transportation of infants, is a question of fact for the jury.
3. *Quære*, whether the fault of a parent or guardian in control of a child, who is injured in a street railway accident, should be imputed to the child and deprive him of his right to recover damages.
4. Of an infant of tender years less discretion is required than of an adult, and the degree depends upon his age and knowledge; and must be determined by the circumstances of the case.

No. 382.   Submitted December 11, 1894.   Decided January 8, 1895.

HEARING on an appeal by the defendant from a judgment in an action to recover damages for personal injuries. *Affirmed.*

The COURT in its opinion stated the facts as follows:

This action was brought to recover damages for injuries suffered by the plaintiff, William F. Falvey, Jr., occasioned by what is alleged to have been the negligence or want of care of the defendant, The Metropolitan Railroad Company, in carrying the plaintiff as a passenger on its street car in

the city of Washington. The accident happened on the 13th of June, 1892, between 9 and 10 o'clock, p. m.

It appears that the plaintiff was, at the time of the accident, a child of about four years of age. He, with his mother and three other children, aged about nine, seven and two years, respectively, got upon the car No. 94 of the defendant's line, in Georgetown, to be carried to Fourth and East Capitol street, in this city. The mother with her four children got on the car about 8 o'clock in the evening, it being then dark. The two eldest children, daughters, were seated in front of the mother, the youngest on her lap, and the plaintiff occupied the seat with his mother, and was placed next to the aisle or space running through the middle of the car between the rows of seats. All the parties continued thus seated until the car had reached a point opposite the City Hall, on its route to its eastern terminus, when the plaintiff asked leave of his mother to change his seat. This he was allowed to do, and he got into another seat by himself, and seated himself at the end of the seat next to the outer rail. His mother then directed the elder sister to go and take a seat by the plaintiff, and to get to the farther end of the seat next to the rail, and to let the plaintiff take the inner end of the seat, next to the aisle. The sister went to the plaintiff, as directed by the mother, and told him to get down and give her the seat next to the rail, and in attempting to get down to change his seat, he missed his footing and fell through the open space, between the floor of the car and the side rail, to the ground, and his leg was run over and crushed by the wheels of the car, and was so badly injured that it was necessary to amputate it.

It appears that the car in which these parties were thus seated, and in which the accident occurred, was what is known as an open or summer car, which has an aisle in the middle, and seats or benches for two or three persons each arranged on the sides of this space. These seats or benches project over and beyond the floor of the car on each side,

5 Ct. App.—12

one side being entirely open, and having a step to enable passengers to get in and out the car; and the other side, known as the inner side, because it is next to the adjoining track, though open, has two lateral rails running parallel along the side of the car, outside the ends of the seats or benches, fastened to the stanchions. One of these rails is situated on a line with the ends of the seats, and is eighteen inches above the floor of the car; the other rail is eight inches above the lower one. There is no step on this inner side of the car, and these rails, it appears, are placed on that side of the car to prevent passengers from getting on and off, and from falling off. There are no guards or fenders of any kind around the wheels of the car.

It is alleged that the cars were defectively and unsafely constructed, at least for the carriage of children, and that it was by reason of such defective and unsafe construction that the accident occurred. What is alleged to be the defective or unsafe structure of the car, with a view to the safe carriage of children passengers, is that the seats or benches project beyond the floor of the car at the side; and that the rail placed at the side to prevent passengers from getting off and from falling off, is eighteen inches above the floor; and as the seats are eighteen inches apart, it leaves or makes an open space of eighteen inches high and eighteen inches broad, of an oval shape, part of which appears to be directly under the end of the seat; and thus makes an unsafe opening for children passengers. It was through this open space between the floor and the rail that the child fell. And though there is no proof of any like accident happening to children since the cars of that make have been in use on the line, (the cars having been used since 1890,) yet the proof shows it to have been a frequent thing for hats, canes, umbrellas and packages to fall through those openings. That they were dangerous to small children, the occurrence of this accident demonstrates.

The facts are few, and there is no serious conflict in the

testimony. At the close of the evidence, the court was requested by the defendant to instruct the jury, upon the whole evidence, to render a verdict for the defendant, which instruction the court declined to give. The verdict being for the plaintiff, a motion for a new trial was made by the defendant, and that motion was overruled. The court below, therefore, seems to have been fully satisfied with the verdict. And the only question on this appeal is, whether the court erred in refusing to grant the instruction to the jury, to render their verdict for the defendant.

, *Mr. Nathaniel Wilson* and *Mr. William G. Johnson* for the appellant:

1. There was no evidence of negligence in the construction of the car. No witness testified that it was unsafe, and no fact in the evidence justifies such a conclusion. There was nothing but the bare fact that the plaintiff fell from the car, while the evidence shows conclusively that the accident could not have happened but for the conduct of the child and those having him in charge. In this state of the case it was error to leave the question of negligence of the company to the jury. Booth on St. Rwys., Sec. 332; *Werbowlski* v. *Rwy. Co.,* 86 Mich. 236; *Maschek* v. *RR. Co.,* 71 Mo. 276; *Metropolitan Rwy.* v. *Jackson,* L. R. 3 App. Cases, 193.

2. The negligence of the parent was obviously the cause of the injury. She declined to take a closed car, though about to journey at night with two helpless children. She took proper precaution at first in having the child sit next to her, and on the aisle side of the car; but committed a gross act of negligence when she permitted him to leave his seat and walk down to another seat, at nearly 10 o'clock at night, in a moving car. But this was not all. Having gotten safely seated, he was then directed to get down out of his seat, which he was not able to do in safety, and in consequence fell from the car. It has been repeatedly ruled by the courts that the negligence of the person having the custody of the

child is imputable to him, when plaintiff, and in such case he cannot recover. *Roller* v. *Rwy.*, 66 Cal. 230; *Smith* v. *Rwy.*, 2 A. & E. RR. Cases, 12; *Messenger* v. *Dennie*, 137 Mass. 197; S. C., 141 Mass. 335; *Holly* v. *Gas Co.*, 8 Gray, 132; *Brown* v. *RR.*, 58 Me. 388; *Leslie* v. *Lewiston*, 62 Me. 472; *Callahan* v. *Bean*, 9 Allen, 402; *Bannon* v. *RR.*, 24 Md. 125; *Munger* v. *RR.*, 4 N. Y. 359, affirms *Hartfield* v. *Roper*, 21 Wend. 615, and *Brown* v. *Maxwell*, 6 Hill, 592; *Morrison* v. *Rwy.*, 56 N. Y. 302; *Mangam* v. *RR.*, 38 N. Y. 458; *Hathaway* v. *RR.*, 46 Ind. 29; *Stillson* v. *RR.*, 67 Mo. 674; *Rwy.* v. *Stratton*, 78 Ill. 88.

To allow this judgment to stand will be to hold that a company is obliged to furnish cars which will be safe for a four-year-old infant to move about in, unprotected and unguarded, at 10 o'clock at night. It is submitted that no car could be constructed, of utility to the general public, which would also meet such a requirement.

*Messrs. Webb & Webb* for the appellee.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

It may be very true that the car in which this accident occurred was in all respects entirely safe for the carriage of adult passengers. But the obligation of the defendant as a common carrier of passengers for hire requires more than that. It requires the carrier, by the exercise of the greatest care and precaution against the occurrence of accidents, to provide cars and appliances for the safe transportation of all conditions of people entitled to be carried. The old and the young are alike entitled to be carried safely. And while a car may be safe for an adult person, it may not be safe for the conveyance of children of tender years.

In the case of *The Pennsylvania Company* v. *Roy*, 102 U. S. 451, the rule is laid down by the Supreme Court of the United States with great clearness and emphasis, that governs in the case of an accident to a passenger while being

carried by a common carrier.   In that case it was held, that a carrier of passengers for hire is bound to observe the utmost caution, and is responsible to them for such injuries received in the course of their transportation as might have been avoided or guarded against by the exercise of extraordinary vigilance, aided by the highest skill.   And that such caution and vigilance extend to all the appliances and means used by him in transporting them.   He must, therefore, provide cars or vehicles adequate, that is, sufficiently secure as to strength and other requisites, for their safe conveyance, and he is liable in damages if, *by reason of the slightest negligence or fault in that regard,* injury results to a passenger.   In that case the doctrine laid down in the well known case of *Stokes* v. *Saltonstall,* 13 Pet. 181, was expressly reaffirmed, as it had been in the previous case of *Railroad Co.* v. *Pollard,* 22 Wall. 341.

Accidents sometimes are extraordinary in their character, and it is difficult to anticipate their occurrence; but if there be negligence or want of the proper degree of caution and prudence on the part of the carrier, the extraordinary nature of the accident will not excuse from liability.   The very object of the strictness of the rule in requiring the highest degree of care and foresight to be exercised, is to avoid all possible accidents and injury.   In this case, it was a matter of fact, as to whether the structure of the car was entirely safe for the transportation of infant children; and that was a question peculiarly within the province of the jury.   The court could not have undertaken to decide the question, and declare that the structure of the car was safe, and such as it ought to have been, notwithstanding the occurrence of the accident, in connection with the other proof in the case.

It is urged, however, that the mother did not take sufficient care of her child, and that it was owing to her permission to change his seat that the accident occurred.   But we cannot perceive that there was any such neglect or want

of care on the part of the mother, as would deprive the child of his right to recover for the injuries suffered by him.   There is in fact nothing in the case to show neglect on her part; and it is quite unnecessary, therefore, for us to decide the much debated and variously decided question, whether the fault of the parent or guardian in control of the child should be imputed to the child to deprive him of his right to recover.   And as to the supposed want of care on the part of the child himself to avoid danger, there is a clear distinction to be observed between the case of an adult, capable of exercising care and discretion, and that of a child of tender years, such as the plaintiff in this case. As said by the Supreme Court of the United States, " The rule of law in regard to the negligence of an adult, and the rule in regard to that of an infant of tender years, are quite different.   By the adult there must be given that care and attention for his own protection that is ordinarily exercised by persons of intelligence and discretion.   If he fails to give it, his injury is the result of his own folly, and cannot be visited upon another.   Of an infant of tender years less discretion is required, and the degree depends upon his age and knowledge.   Of a child of three years of age less caution would be required than of one of seven, and of a child of seven less than of one of twelve or fifteen.   The caution required is according to the maturity and capacity of the child, and this is to be determined in each case by the circumstances of that case."   *Railroad Co.* v. *Gladmon,* 15 Wall. 401, 408.   Here the child was but four years of age when the accident happened.

Upon the whole, we think the court below was right in rejecting the prayer offered by the defendant, and we must therefore affirm the judgment; *and it is so ordered.*

*Judgment affirmed.*