ROMINE *v.* EVANSVILLE AND TERRE HAUTE RAILROAD COMPANY.

[No. 3,017. Filed February 23, 1900.]

CARRIERS. — *Passengers.* — *Negligence.* — *Contributory Negligence.* —
Plaintiff was a passenger on defendant's train, standing inside the car looking through the window of the rear door, his hand resting against the casing of the closet door, when the conductor approached, opened and closed the closet door quickly, and plaintiff's finger slipped into the crack when the door opened and was crushed by the door when it was closed. Plaintiff testified that the conductor said immediately after the accident that he saw him there and ought to have spoken to him, and that he did not see the conductor or know of his presence until his finger was crushed. *Held*, that the questions as to defendant's negligence and plaintiff's contributory negligence should have been submitted to the jury. Robinson, J., dissenting.

From the Sullivan Circuit Court. *Reversed.*

*John S. Bays*, for appellant.

*John E. Iglehart*, *Edwin Taylor* and *John T. Hays*, for appellee.

BLACK, J.—The appellant brought his action to recover damages for a personal injury suffered by him, while a passenger on appellee's railway train, through the alleged negligence of the appellee, without the appellant's fault. At the conclusion of the evidence, the court, upon the appellee's motion caused the jury to return a verdict for the appellee.

The evidence showed that the appellant, having a ticket for passage from Sullivan to Farmersburg, on appellee's railway, which had been sold to him by appellee's agent, entered the rear car of a passenger train going north on said railway at Sullivan, and took a seat near the rear end of the car, on the west side thereof. After the train departed from Sullivan, the conductor came into the car and took up appellant's ticket. The appellant was a man sixty-six years old, who many years before had lived and worked in the region through which the train was passing, but had not been along that way for many years, except that he had earlier on the same day ridden on said railroad to Sullivan from Farmersburg, where he resided. There were but few passengers in the car. Soon after the conductor had taken up the appellant's ticket, he left his seat and went to the rear door, in which there was a pane of glass, for the purpose of viewing the country and farms where he had formerly been, and noting the changed conditions. In the southeast corner of the car, beside this door, was the water-closet, the door of which for entrance thereto from the aisle of the car was at the appellant's left. He stood inside the car, at the closed rear door thereof, looking out through the glass, having his right shoulder against the west side of the door. To steady himself, the car being in motion, he placed and pressed his left hand upon the water-closet, his hand being against the door casing of the water-closet door, and his fourth or little finger being over the place where the edge of the door on which were its hinges met the door casing. When the train had left the station of Shelburn,

and while the appellant was thus situated, the conductor again came into the car, and passed down the aisle, and opened and shut the door of the water-closet quickly. The appellee's little finger on his left hand, so pressing against the water-closet, dropped or slipped into the crack when the door was so opened, and was crushed by the door when it was so shut. The appellant was a little hard of hearing, and the aisle of the car along which the conductor approached him was carpeted. He did not hear the conductor or know of his presence until his finger had been so crushed. The conductor at once turned to the appellee and caught his hand and spoke to him. At the time of the trial this conductor was dead, and only the appellant testified as to the occurrence and as to what was then said. The appellant testified that the conductor said: "Uncle, I'm sorry, but I have ruined your finger; I saw you there, and I ought to have spoke to you." The witness testified that he himself "looked at it", and said, "I think you have." He also testified that the conductor said that when the bone popped it drew his attention, which was the reason he threw the door open. The conductor took his arm and led him to a seat, and went into another car, from which he returned with a brakeman, with some cotton and a rag. The brakeman wrapped up the finger, and the conductor took the appellant's name and place of residence.

The appellant, being asked as a witness to tell the jury whether or not, as he stood at the time of the injury, there was anything to his knowledge to prevent the conductor from seeing appellant's hand, answered that he did not see how he could help but see it. The appellant did not observe anything to indicate that there was any danger in standing where he did. He testified that he knew there was a door to the water-closet; that he placed his hand to steady himself, but did not notice where he put it, except to steady himself. He was "in the neighborhood" of six feet in height. His left hand on the door was not quite as high as his head.

In answer to a question on cross-examination, the appellant said: "He just grabbed my hand. He says, 'Uncle, I'm sorry, but I have ruined your finger, and I ought to have spoke to you before I opened the door.'" On reëxamination he said: "He just turned right around and caught it, and he says, 'Uncle, I'm sorry, but I have ruined your finger.' I looked at it, and says I, 'I think you have.' He says, 'I ought to have spoke to you when I seen it there,—seen your hand there.'" He testified, also, that he did not feel his finger slip into the crevice when the conductor opened the door; that he was not giving any attention to it; that it went in quickly, and that he could not have jerked it out after the door opened.

One of the appellee's conductors testified as a witness for the appellee. On cross-examination he said that it is the duty of a conductor to take up tickets, and, among other duties, to open closet-doors. He was asked and answered as follows: Q. "When he opens a door, sees a man's hand on the door, he is supposed to notify him he is going to open it?" A. "Yes, I suppose he ought to." Q. "And when he does not do that, then he does not do his duty?" A. "No; I don't think he does." There was other evidence, chiefly relating to the extent of the appellant's injury. We have sought in the above to set out the substance of the evidence affecting the questions as to the appellee's negligence and as to the appellant's freedom from contributory negligence, from which we must determine whether these questions should have been submitted to the jury, or were properly withheld from the jury.

The argument of counsel is devoted chiefly to the question relating to contributory negligence, though counsel for the appellee insist briefly that negligence on the part of the appellee was not sufficiently shown. It is within the power of the court thus to control the verdict by its instruction to the jury only where there is a total absence of evidence upon some essential issue, or where there is no conflict, and

the evidence is susceptible of but one inference. *City of New Albany* v. *Ray*, 3 Ind. App. 321, 323; *Kearns* v. *Burling*, 14 Ind. App. 143.

The question of negligence must be submitted to the jury, where there is room for difference of opinion between reasonable men as to the inferences which might fairly be drawn from conceded facts, as well as where there is room for such difference as to the existence of the facts from which it is proposed to infer negligence. Shearm. & Redf. Neg. §54; *Cincinnati, etc., R. Co.* v. *Grames*, 136 Ind. 39.

Where the inferences to be drawn from the proof are not certain and uncontrovertible, the question of negligence cannot be decided as a question of law by directing a verdict, but must be submitted to the jury. *Thurber* v. *Harlem Bridge, etc., R. Co.*, 60 N. Y. 326.

The question as to contributory negligence is generally one for the jury, and the courts interfere with the verdict only in clear cases. *Terre Haute, etc., R. Co.* v. *Buck*, 96 Ind. 346, 359.

Common carriers of passengers are held to a very high degree of care. They are required to exercise the highest degree of care to secure the safety of passengers, and are responsible for the slightest neglect, if injury is caused thereby. *Jeffersonville, etc., R. Co.* v. *Hendricks*, 26 Ind. 228; *Terre Haute, etc., R. Co.* v. *Buck*, 96 Ind. 346, 356, 49 Am. Rep. 168; *Louisville, etc., R. Co.* v. *Thompson*, 107 Ind. 442, 450; *Louisville, etc., R. Co.* v. *Snyder*, 117 Ind. 435, 437, 3 L. R. A. 434; *Louisville, etc., R. Co.* v. *Kelly*, 92 Ind. 371; *Louisville, etc., R. Co.* v. *Nolan*, 135 Ind. 60; *Evansville, etc., R. Co.* v. *Athon*, 6 Ind. App. 295.

The common carrier of passengers owes them not merely the duty of transportation, but also that of exercising for their safety the highest care and diligence compatible with the nature of the carriage. The carrier owes the passenger the duty of warning him against danger when it is at hand, and of cautioning him against acts of

imprudence which may endanger his person, whenever the circumstances are such that the safety of the passenger seems to require it. Hutchinson on Car. 503.

In *Yerkes* v. *Sabin*, 97 Ind. 141, 145, 49 Am. Rep. 434, it was said to be a rule of law that a common carrier is *prima facie* liable, where it is proved that the passenger took passage and was injured without fault on his part, unless the evidence proving the accident also shows that the injury was not attributable to the negligence of the carrier.

In *Memphis, etc., Co.* v. *McCool*, 83 Ind. 392, 43 Am. Rep. 71, where it was alleged that the passenger's injury was caused by the defendant's servants, in negligently suffering a bale of cotton goods to fall upon him, the court held that the duty of the carrier is substantially the same as to the capacity and conduct of the servants as it is in respect to the means of transportation; that the duty as to skill, care, and diligence of the servants being essentially the same as that respecting machinery, there is no reason for making a distinction as to the burden of proof between a case where the act of the servant is the cause of the injury, and one where the injury is caused by the machinery; and that the rule that where an injury is proved a *prima facie* case is made applies not only to defects in machinery for carriage, but also to the acts of the carrier's servants. See, also, *Terre Haute, etc., R. Co.* v. *Buck*, 96 Ind. 346, 358; *Louisville, etc., R. Co.* v. *Snyder*, 117 Ind. 435, 3 L. R. A. 434; *Louisville, etc., R. Co.* v. *Hendricks*, 128 Ind. 462; *Kentucky, etc., Co.* v. *Quinkert*, 2 Ind. App. 244, 252; *Railroad Co.* v. *Pollard*, 22 Wall. 341.

Where, in proving the occurrence from which the injury resulted, the nature and cause of the accident appear, if the defendant's freedom from negligence be thus shown, there can not be said to be a *prima facie* case against the defendant. *Terre Haute, etc., R. Co.* v. *Buck, supra.* Where the nature and cause of the accident are thus shown in proving the occurrence from which the injury resulted, the

evidence may present a state of facts from which an inference as to whether or not there was due care and diligence can not properly be drawn by the court, there being room for difference of opinion as to the proper inference from the uncontradicted facts shown in evidence; and in such case the drawing of the inference, and therefore the determination of the question as to the carrier's negligence must be left to the jury.

Without recounting particular facts in the evidence bearing upon the questions in dispute, we are of the opinion that there was evidence from which the jury could have concluded that the conductor, immediately before his act which occasioned the injury, observed the appellant standing before the window of the car door, and saw his attitude there, including the position of his left hand, and knew what the appellant was doing, and was apprised that the appellant did not see the conductor, and was not aware of his actions. If the jury should thus find, then, if the court had given proper instructions upon the law, including an instruction as to the very high degree of care due from the carrier toward the passenger, we can not say that the jury might not, within its rightful province, determine that in the conductor's opening and closing the door in the manner shown, without any warning or notice to the appellant, there was a failure to exercise due care so prescribed by the instruction of the court.

We can not say, as a matter of judicial determination, that a conductor exercising the high degree of care, watchfulness, and diligence required by law of carriers of passengers, would not have taken such precautions as would have prevented the injury, or that, as to the carrier, the injury was the result of mere accident.

We have little difficulty with the other question,—that relating to contributory negligence. Taking into consideration the mode of construction of the commodious and convenient American passenger car, and the commonly known habits of the traveling public in our railway carriages, we

are unable to regard it as negligence *per se* for the appellant to take the position and attitude in which the conductor saw him at the time of the injury. He had a reasonable motive for placing himself where he could take note of the appearance of the country more fully than at a side window. At least, the gratification of his inclination to view the country from the rear window, if it could be done without apparent danger, was not necessarily negligence on his part. Whether or not he exercised ordinary care, which he was bound to exercise, in so standing, and in placing his hand in such position that the finger which was injured was exposed to such injury, can not be decided as a question of law. It was a question for the jury, under proper instructions from the court.

In *Wylde* v. *Northern R. Co.*, 53 N. Y. 156, the plaintiff, a passenger, had arisen from his seat to button his coat, in preparation for leaving the car, the train having reached his destination, but being still in motion. The locomotive being detached, the cars moved on through the depot, and struck a "bumper" with great force, throwing the plaintiff down and injuring him. It was said: "There is no ground for imputing negligence to the plaintiff. It is probable that if he had retained his seat the injury would not have happened. He had no notice of danger, and had a right to assume that the train would be stopped in the usual manner. The train had reached its destination, and the plaintiff left his seat with a view of leaving the car as soon as the train stopped. He did as passengers usually do, and what the company must have known they were accustomed to do, and the plaintiff could not have supposed that the act was inconsistent with safety."

In *Gee* v. *Metropolitan R. Co.*, L. R. 8 Q. B. 161, the passenger got up from his seat, and put his hand on the bar which crossed the window of the door of the carriage, for the purpose of looking out to see the signal lights and to show them to a fellow passenger, and, while he was leaning forward a little upon the car door, it flew open, and

he was thrown out and injured. It was said, per Cockburn, C. J.: "Assuming that the company had done their duty, the passenger did nothing more than that which came within the scope of his enjoyment while traveling, without committing any imprudence; in passing through a beautiful country, he certainly is at liberty to stand up and look at the view, not in a negligent but in the ordinary manner of people traveling for pleasure." See, also, *Sturdivant* v. *Ft. Worth, etc., R. Co.* (Tex. App.), 27 S. W. 170; *Louisville, etc., R. Co.* v. *Berg* (Ky.), 32 S. W. 616; *Bronson* v. *Oakes,* 76 Fed. 734; *Barden* v. *Boston, etc., R. Co.,* 121 Mass. 426; *Baker* v. *Manhattan R. Co.,* 118 N. Y. 533; *Railroad Co.* v. *Pollard,* 22 Wall. 341.

If the search of counsel has not resulted in the finding of parallel cases in the books, those who have charge of the legal departments of railway companies would probably agree that such result indicates that there have not been many injuries to passengers in like situations. The experience of the courts has not been such as to impel them to formulate a rule of law declaring it to be negligence *per se* for a passenger to occupy such a position and attitude in the railway car, and we can not say that there was no room for difference of opinion between reasonable men as to the inference which might fairly be drawn from the conduct of the appellant.

We are of the opinion that the cause should have been submitted to the jury under proper instructions. The judgment is reversed, and the cause is remanded for a new trial. Robinson, J., dissents.