CASE 74—ACTION BY ELIZABETH JOLLY AGAINST I. C. R. R. Co. FOR
PERSONAL INJURIES.—FEB. 12.

# Illinois Central R. R. Co. v. Jolly.

### APPEAL FROM OHIO CIRCUIT COURT.

JUDGMENT FOR PLAINTIFF AND DEFENDANT APPEALS. REVERSED.

RAILROADS—INJURY TO PASSENGER—JOLTS OF TRAIN—NEGLIGENCE—
CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

Held:   1. Whether a passenger is wanting in reasonable care in
leaving her seat and standing in the aisle on approach to the
end of her journey is a question for the jury, if, while so
standing, she is injured by some jerk or bump of the train
not incident to its proper management.

2. A passenger, who, on approaching her destination, leaves her seat
and stands by the door before the train stops at the
station, can not recover for injuries sustained in a
fall caused by the stopping of a train with no more jerk than
was incident to its stoppage in the exercise of proper care.

3. In an action against a railroad for injuries to a passenger caused
by a fall resulting from her leaving her seat and standing at
the door before the stopping of the train, the jury should have
been instructed that, even if defendant was negligent in the
manner of stopping the train, if the passenger failed to exer-
cise ordinary care for her own safety, considering her age
(seventy-six years) and condition, but for which want of care
she would not have been injured, she could not recover.

H. P. TAYLOR, AND PIRTLE & TRABUE, FOR APPELLANT.

### POINTS AND AUTHORITIES.

1. Proof to be available must be supported by the allegation.
Kaufman, &c. v. Gas. Co., 105 Ky., 131; Shields v. Heard, 21
R., 992; Chun, By &c. v. Ky. & Ind. Bridge Co's Receiver, 23
R., 1092; Thomas v. L. & N. R. R. Co., 18 R., 164; McCain
v. L. & N. R. R. Co., 13 R., 334; Kerney v. City of Covington,
1 Met.. 339.

2. A variance between averment and proof may be taken ad-

Illinois Cent. R. R. Co. v. Jolly.

vantage of by motion as in cases of non-suit. Mitcherson v. Grays, &c., 4 B. Mon., 400; Price v. Price's Executor, 101 Ky., 28.

3. Instructions shall conform to the issues joined by the pleadings. Henry v. L. & N. R. R. Co., 3 R., 695; Grogan & Kenny v. Allen, &c., 5 R., 251; Henderson Hominy Mill Co. v. Watkins, 15 R., 301; Bogenschutz v. Smith, 84 Ky., 330; Shields v. Heard, 21 R., 992; L. & N. R. R. Co. v. Hall, 24 R., 2492.

4. Plaintiff having pleaded specifically as to the ankle and leg, she is held to that plea. Davis v. Paducah & Light Co., 68 S. W., 140; Shaw v. Hollenbach, 65 S. W., 636; Louisville Ry. Co. v. Park, 29 S. W., 455; L. & N. R. R. Co. v. McGary's Admr., 20 R., 691.

5. Special damages, such as loss of time, which are for the natural, but not necessary results of the act complained of, must be specially pleaded. Am. & Eng. Ency., vols. 5, 50, see also note 1; Bliss on Code Pleading, 2d ed., sec. 297b; Shearman & Redfield on Negligence, 4th ed., vol. 2, sec. 739; Hale on Damages, 223, 224; Hutchinson on Carriers, 2d ed., sec. 796; L. & N. R. R. Co. v. Mason, 24 R., 1623; L. & N. R. R. Co. v. Reynolds, 24 R., 1402; Macon v. Paducah St. R. R. Co., 23 R., 46.

6. There was a decisive preponderance of evidence in this case against the finding of the jury; it should have been set aside and a new trial awarded. L. & N. R. R. Co. v. Hall, 24 R., 2487, Ibid.; L. & N. R. R. Co. v. Reynolds, 24 R., 1402, Ibid.; L. & E. Mail Co. v. Gilliland, 24 R., 2081; Singer Mfg. Co. v. Howes, &c., 20 R., 1607; Newson v. Lycan, 3 J. J. Mar., 440.

7. When the verdict is palpably against the evidence, a new trial should be awarded. Triple-State Natural Gas & Oil Co. v. Wellman, By, &c., 24 R., 851; Deposit Bank of Sulphur v. Peak, 23 R., 19; Bogard, &c. v. Turner, &c., 23 R., 630.

GLENN & RINGO, JOHN B. WILSON AND E. E. KELLY, ATTORNEYS FOR APPELLEE.

1. The evidence shows that the seat of the injury to appellee was in the ankle, and that the ligaments of the ankle holding the bones together as well as those of the small bones of the instep, had been torn loose or ruptured, causing discoloration and swelling of the foot, and was at her age (seventy-six years) a permanent one.

2. We understand the rule to be that mere loss of time may be pleaded generally, unless the time lost is of peculiar and unusual value, in which case it must be specifically pleaded.

3. The evidence is amply sufficient to support the verdict, the jury being the sole judges thereof, and we contend that the damages given are not excessive.

### AUTHORITIES CITED.

Parker v. Jenkins, 3 Bush, 587; Louisville, Cin. & Lex. R. R. Co. v. Case's Admr., 9 Bush, 729; Second Greenleaf on Evidence, sec. 254; L. & N. R. R. Co. v. Reynolds, 71 S. W., 516; L. & N. R. R. Co. v. Mason, 72 S. W., 27.

OPINION OF THE COURT BY JUDGE HOBSON—REVERSING.

Elizabeth Jolly, who was then 76 years old, took the passenger train of the Illinois Central Railroad Company at Caneyville, Ky., for Owensboro, intending to change cars at Horse Branch, and there take the train on the road running to Owensboro. She was accompanied by her son, and they had two telescopes. She and her son state that when the train reached Horse Branch, and had stopped for the station, after two other passengers had gotten off, she said to her son that they had better get off; that he picked up the two telescopes, and, she walking in front, they went to the door; that as she got to the door the train started to back, and by the lurch or jerk of the train she was thrown down, her head falling on the platform of the car, and her ankle being twisted under her and severely sprained. She was unable to walk on the foot. The ankle swelled up and turned black. For two or three weeks she could not walk a step, and had to remain in bed. She suffered a great deal, and it was two months before she could put a shoe on. At the trial, in March, 1903, she was still unable to walk on the foot, or to do anything except such things as she could do sitting in a chair, such as knitting and sewing. Previous to that time she had done all her housework, including washing. On the other hand, the defendant proved by W. D.

Illinois Cent. R. R. Co. v. Jolly.

Stith, a drummer who was on the train, that as it approached
the station he was in the smoker, and came to the door
facing the door of the car in which Mrs. Jolly was; that he
saw her coming toward the door before the train had come
to a stop; that she reached it while the train was yet mov-
ing, and when the train stopped she was in the door, and fell
forward on the platform; that there was no  jerk or lurch
of the train, but it stopped in the usual and customary man-
ner without any backing; and that she simply fell forward
when the train stopped. The defendant also proved by W.
P. Miller, who lived  at Horse Branch, that he was stand-
ing on the platform, and saw the train as it pulled into the
station; that, as the train came up, he saw the lady stand-
ing in the door, and, as it stopped, she fell. He also stated
that there was no jerk or bump of the cars, and no backing
of the train. The conductor of the train, who was standing
on the platform in front of the car, testifies to the same
facts; and all the other employes on the train testify that
the train stopped in the usual way, without jolt or jar, and
that it was not backed after it stopped. The brakeman on
the Owensboro train said she told him that her son was
at the time rushing her off the train, and she thought that,
if had not rushed her off, she would not have gotten hurt.
The porter on the train testified that when he called out the
station the old lady started to get up, and he said, "Lady,
wait until the train stops," and went to the smoker door
and called out the station again, and then went out and took
out the baggage, but did not see her any more, because he
had his baggage up to the platform, and stepped off as soon
as the train got still enough. A witness at the hotel at Horse
Branch, to which the old lady went after she left the train,
testified that she said that, if her grandson had been along,
she would not have gotten hurt. And another witness at the

hotel says that she added that her son had her to get up before the train stopped, and he was the cause of her getting up so quick. By several of the witnesses it was also proved that she said her ankle had been hurt before, and was weak.

On these facts, the court instructed the jury as follows:

"(1) The court instructs the jury that if they believe from the evidence that while the plaintiff was a passenger on one of the defendant's passenger trains and cars, and after said train had reached Horse Branch, a station on its railroad, at which point she was to get off of said car, and after she had been notified by the conductor, or other servants of defendant in charge of said train and car, to get off, and after the train had stopped she started to get off the train, and, while herself in the observance of ordinary care, the servants and agents of the defendant in charge of its said train carelessly and negligently started said train backward, causing a sudden and violent jerk, by which the plaintiff was thrown down and her ankle sprained, and she thereby damaged as the direct or proximate result of the negligence of the defendant's servants in charge of its said train, they should find for the plaintiff the damages sustained by her as a consequence of her injuries, not exceeding the amount claimed, $1,999."

"(7) If the jury do not believe from the evidence that the train on which plaintiff was a passenger had stopped for Horse Branch Station and she had been notified by the conductor or other servant in charge of the train to get off, and, after stopping, while plaintiff was starting to get off, said train was, by the negligence of the agents and servants of defendant, caused to move with a violent jerk, by which plaintiff was caused to fall, and was injured, and she was not so caused to be injured by the negligence of the defendant's servants, they should find for the defendant.

Or if they believe from the evidence that before reaching the station, and before being notified to get off the train, plaintiff voluntarily left her seat, and negligently stood up in the door, and was caused to fall by the ordinary stopping of the train, and, but for her own negligence, if they believe from the evidence she was negligent, she would not have been hurt, they should find for the defendant."

The other instructions of the court give the measure of damages, define negligence and  ordinary care, and state correctly the degree of care required of the defendant in the operation of its train. The first instruction sets out the state of facts on which the plaintiff was entitled to recover, if the injury accepted as true the version of the transaction given by her and her son. The only question we deem it necessary to decide is whether the seventh instruction fairly submitted to the jury the state of facts shown by the evidence for the defendant, on which it sought exoneration from liability. We have had great difficulty to determine just what the jury were authorized to understand the court meant by the instruction. If the first clause of it was meant as the converse of No. 1, then there was no necessity for the second clause. The instruction can not mean that the plaintiff could not recover unless she was thrown down by a sudden jerk from the backward movement of the train after it had stopped, for, by the last clause, if the plaintiff left her seat before the train reached the station, and stood in the door, and was caused to fall by the ordinary stopping of the train, yet she could recover, unless she did this negligently, and but for her own negligence she would not have been hurt.

Taking the entire instruction together, we conclude its fair meaning to the jury was that if the plaintiff left her seat and went to the door while the train was still moving, and, while standing there, was caused to fall by the ordinary

stopping of the train, the jury was still warranted to find
for her, unless they believed that in so doing she failed to
exercise such care as might be ordinarily expected of a per-
son of usual prudence, situated as she was, and, but for this,
would not have been injured. The question then arises, is
this the law of the case?

It is a matter of common knowledge that, as a rapidly
rolling passenger train stops at a station, there is a forward
movement of persons even sitting in the car. This move-
ment is much more pronounced when one is standing up,
and there is greater danger of an old person falling than
in the case of one younger, or who is on the lookout, from
experience, for the forward surge of the body just as the
train abruptly stops. The railroad company is not respon-
sible for this. No amount of care can avoid it. It is not
due to any jolt or jar of the train, but simply to the fact
that the body of the person standing up continues to move
forward when the feet, resting on the floor of the car, have
stopped. It is the safest for passengers on railway trains
to keep their seats until the train stops. If they leave their
seats when the train is approaching the station, they take
the risk of those things which are incidental to the stopping
of the train in the usual way, and with proper care.

In Hughlett v. L. & N. R. Co. (15 R., 178) 22 S. W.,
551, the court said: "All who board trains as passengers
know that the announcement is usually made as the train
approaches to a depot before it actually reaches it, to enable
passengers to prepare for leaving." A passenger is not re-
quired to keep his seat during the whole journey. He may
move from one part of the car to another. When the train
approaches his station, and it is announced, he may prepare
to leave the train. Whether he is wanting in reasonable
care in leaving his seat then, and standing in the aisle, is a

question for the jury, while if so standing he is injured by some jerk or bump of the train not incidental to its proper management. New Jersey Railroad Co. v. Pollard, 22 Wall., 341, 22 L. Ed., 877; Treat v. Boston, etc., R. R., 131 Mass., 371; 5 Am. & Eng. Ency. of Law, 682; 6 Cyc., 650 and cases cited. A passenger who rides in a place more danger-ous than that intended for passengers, and is there hurt by the usual and proper operation of the train, when he would not have been hurt had he remained in his seat, can not be said to have been injured by the negligence of the carrier. In the case at bar, if the evidence for the defendant is true, there was no negligence on its part, and the proximate cause of the accident was the old lady's placing herself at the car door before the train stopped. In lieu of instruction 7, the court should have instructed the jury that if they be-lieved from the evidence that, before the train stopped at the station, the plaintiff left her seat, and stood up at the door of the car, and while standing there was caused to fall by the stopping of the train in the usual manner, with no more jerk than was incidental to the stopping of the train in the exercise of proper care, as defined in instruction 3, they should find for the defendant. The court gave no dis-tinct instruction on contributory negligence, and, in addi-tion to the instruction indicated, the jury should have been instructed, in effect, that, although the defendant was negli-gent, as above defined, still it was incumbent on the plaintiff to exercise such care for her own safety as might be ordi-narily expected of a person of usual prudence, of her age and condition, situated as she was, and, if she failed to exercise such care, and, but for this, would not have been injured, she could not recover.

Judgment reversed, and cause remanded for a new trial.