### T. H. LINDSEY v. ATLANTIC COAST LINE RAILROAD COMPANY.

(Filed 18 April, 1917.)

**1. Carriers of Passengers—Railroads—Negligence.**

A large bolt of the kind used for fastening rails together, loose in the aisle of a passenger coach, which caused a passenger therein to fall and injure himself while going for a drink of water, is sufficient evidence of the defendant's negligence in the passenger's action for damages against the carrier.

**2. Same—Safety of Passenger—Duty of Carrier—Prima Facie Case—Burden of Proof—Trials—Nonsuit.**

Under its contract of carriage a railroad company owes its passengers a high degree of care for their safety, and where in the passenger's action for damages there is evidence tending to show that the plaintiff was injured by stepping upon a large bolt in the aisle of the coach, negligently left there by defendant's employees, a prima facie case is made out, imposing the burden of proof on the defendant to show that it was not in default of this duty.

**3. Same—Instructions—Proximate Cause.**

In a passenger's action against a railroad company for damages for an injury received by him from stepping upon a large bolt in the aisle of the defendant's passenger coach, a charge is proper that, the coach being under the management and control of the defendant; it would afford evidence of negligence and proximate cause should they find the accident would not have occurred in the ordinary course of things or in the defendant's exercise of proper care.

CIVIL ACTION, tried November Term, 1916, of DURHAM, before Daniels, J., upon these issues:

1. "Was the plaintiff injured by the negligence of the defendant as alleged in the complaint?" which the jury answered "Yes."

2. "Did the plaintiff, by his own negligence, contribute to his injury?" which the judge, by consent of both plaintiff and defendant, answered "No."

3. "What amount, if any, is the plaintiff entitled to recover?" which the jury answered "$3,000."

From the judgment rendered, the defendant appealed.

*Douglas & Douglass, Brawley & Grant for plaintiff.*
*P. A. Wilcox, Fuller, Reade & Fuller for defendant.*

BROWN, J. There are only two assignments of error; one relates to the refusal to sustain motion to nonsuit and the other to a part of the charge. As we understand the law applicable to this case, the motion was properly denied.

The material facts as testified to by plaintiff and his witness are practically uncontradicted. Plaintiff was a passenger on defendant's train from Goldsboro to Warsaw, 16 December, 1914. It was nearly dark and the lamps were lighted. Plaintiff was seated in the smoking apartment of the rear passenger coach. A short while before the train reached Warsaw the plaintiff, desiring a drink of water, arose from his seat, approached the water tank in the rear of the coach, and stepped on a loose bolt which was on the floor of the coach, was thrown down and seriously injured. This bolt was large and of a kind used in bolting the rails of the track together. Such bolts are frequently carried by railroad trackmen with them on defendant's engines and trains.

Plaintiff testified: "When I stepped on the bolt it rolled and twisted under me, shot my leg or left foot from under me, and it slid under my right foot and threw me to the floor, not allowing my body to fall over as it would ordinarily if out in the open. This rear seat was so close to me I fell on the side of that and my hip slid out like that. When I pulled up by the bench and attempted to make a step I found I had lost the use of this left hip, hurting me very much at the time. I leaned over and caught the seat opposite across the aisle and sat down on this seat, which had no arm to it. This bolt rolled out against the rear door of the coach when I stepped on it, and the motion of the train rolled it back in the aisle—down the aisle, like."

The defendant offered evidence tending to rebut the allegation that the injury was caused by its negligence. Its evidence tended to prove that the cars were properly lighted; that the bolt must have been suddenly rolled in the aisle, and that there was no time or opportunity afforded defendant to discover and remove it, and that the plaintiff's injury was the result of an accident that reasonable care could not have prevented. It will be seen from the response to the second issue that the plaintiff's conduct in no way contributed to his injury.

The defendant's counsel earnestly contends that there is no evidence of negligence to be submitted to the jury; that there is no evidence "as to the length of time the bolt had been on the floor, who put it there, or that it was even discovered by or brought to the attention of any members of the train crew."

A loose track bolt, as large as the one in evidence, lying on the aisle floor of a passenger car, is unquestionably a danger and menace to the passengers.

The defendant's witness Page testified: "I would have picked the bolt up quickly if I had seen it. We are supposed to pick up those things." Its witness Whitehead said: "If I had seen this bolt on the floor, I would have picked it up, because some one might have stepped on it or slipped over it; some one might have stumped and broke his thigh."

The learned counsel for defendant mistake the rule of evidence in such cases. The burden is not on plaintiff to prove how the bolt happened to be on the aisle floor, nor how long it had been there. When plaintiff offered evidence tending to establish the facts we have stated, he made out a prima facie case of negligence, and a motion for nonsuit cannot properly be allowed. It is only in cases where no sufficient evidence of negligence is introduced, or where the evidence offered by plaintiff also rebuts any presumption that might otherwise arise from it, or establishes contributory negligence that such motion may be properly sustained, at close of plaintiff's evidence. The plaintiff having made out a prima facie case of negligence, it became incumbent upon defendant to offer evidence to rebut it and to exculpate itself from the charge of negligence.

We are referring, of course, to injuries to passengers only, where the cause of action is based upon an alleged breach of a contract for safe carriage. This rule is based upon the contract of safe carriage of the passenger which the carrier has entered into, and is not, therefore, *ex delicto*. In the earlier English cases this contract was interpreted as a contract of insurance, but now it is treated only as a contract to exercise a high degree of care. Therefore, where the passenger is injured by an aparent act of negligence while in the care of the carrier, the latter must rebut such prima facie case by evidence tending to prove that it exercised such degree of care and that the injury was not the result of its negligence.

This is the well settled doctrine of the courts of this country. 43 Am. Dec., 363, notes, where it is said: "Where a person, suing a carrier of passengers for an injury, shows that the injury happened to him without fault or negligence on his part, in consequence of the

breaking or failure of the vehicle, roadway, or other appliances owned or controlled by the carrier in making the transit, he makes out a prima facie case for recovery of damages," citing a large number of adjudications. Thompson Carr. Pass., 210; Ang. on Carr., sec. 569; *Mercer v. Penn. Ry.,* 64 Pa. St., 230; *McCord v. R. R.,* 134 N. C., 56.

A more recent case is *Ferne v. Penn. Ry. Co.,* 96 Atl. Rep., 590. A case very much in point is *Schonleben v. Interborough Rapid Transit Co.,* 145 N. Y. Sup., 692. In delivering the opinion of the Court, *McLaughlin, J.,* says: "The plaintiff was a passenger in one of defendant's cars. The floor of the car was covered with wooden slats about an inch apart, fastened thereto by metal screws. One of these screws in the aisle between the seats projected above the slats from one-half to three-fourths of an inch. When the plaintiff reached his destination he was told to leave the car, and as he was doing so, one of his shoes caught upon this screw, and he was thrown down and injured. He had no knowledge of the existence of the screw until he was thrown down, and offered no evidence to show how long it had been in that condition; nor did it appear that the defendant had any knowledge, at or prior to the accident, of the actual condition of the screw when plaintiff was thrown. The court dismissed the complaint, and plaintiff appeals. . . . I am of the opinion that the judgment should be reversed. The relation of the plaintiff to the defendant at the time of the accident was that of a passenger. The defendant was obliged to exercise the greatest care for his safety. The mere happening of the accident, under the circumstances described, imposed upon the defendant the duty of an explanation. It was bound, without any further evidence, to show, if it could, that the existence of the screw at the place and in the condition in which it was, which caused plaintiff to fall, was not due to its negligence."

This is the accepted doctrine obtaining in the Federal as well as the State courts.

*Mr. Justice Lamar,* in delivering the opinion of the Court in the case of *Gleeson v. R. R.,* 140 U. S., at p. 443, says: "Since the decisions in *Stokes v. Saltonstall,* 13 Pet., 181, and *R. R. v. Pollard,* 22 Wall., 341, it has been settled law in this Court that the happening of an injurious accident is in passenger cases prima facie evidence of negligence on the part of the carrier, and that (the passenger being himself in the exercise of due care) the burden then rests upon the carrier to show that its whole duty was performed and that the injury was unavoidable by human foresight. The rule announced in these cases has received general acceptance, and was followed at the present term in *Inland and Seaboard Coasting Co. v. Talson,* 139 U. S., 557."

This is, of course, followed by the lower Federal courts. *Wiley v. R. R.*, 227 Fed., 127. The remaining assignment of error is to the charge, viz.: "I charge you when a thing or condition or operation is carried on which causes injury is shown to be under the management of the defendant, and the injury is such as in the ordinary course of things does not happen, if those who have the management use the proper care, it affords reasonable evidence, in the absence of explanation by defendant, that the accident arose from want of care, and carries the question of negligence to the jury, not relieving the plaintiff of the burden of proof, but being merely submitted to the jury in view of all the circumstances and conditions for the purpose of enabling them to say whether or not that was negligence, and that such negligence was the proximate cause of the injury."

Of course, his Honor applied this to the present case, wherein a passenger is proven to have been injured. As a proposition of law, we see nothing in it that this defendant can reasonably complain of, in view of the array of authorities we have cited.

No error.