## MARCELLA HUMPHRIES v. QUEEN CITY COACH COMPANY.

(Filed 19 December, 1947.)

**1. Carriers § 21a—**

The liability of a carrier for injury to passengers must be based on negligence, since a carrier is not an insurer of their safety; but a carrier is under duty to exercise the highest degree of care consistent with the practical operation and conduct of its business.

**2. Same—**

When a passenger is injured by machinery and appliances wholly under the carrier's control, this fact is sufficient *prima facie* to show negligence.

**3. Negligence §§ 19b (1), 19c—**

Ordinarily a *prima facie* showing of negligence carries the case to the jury in the absence of evidence establishing contributory negligence as a matter of law.

**4. Carriers § 21c—**

A passenger's evidence that as she was alighting from defendant's bus, her shoe heel caught in a raised piece of steel on the floor of the bus near the steps, causing her to fall to her injury, is sufficient to make out a *prima facie* showing of negligence.

**5. Trial § 22b—**

On motion to nonsuit, defendant's evidence which tends to contradict or impeach plaintiff's evidence will not be considered, but so much of defendant's evidence as is favorable to plaintiff or tends to explain and make clear evidence offered by plaintiff may be considered.

**6. Carriers § 21c—**

Plaintiff passenger testified that she fell to her injury in alighting from defendant's bus when her shoe caught in a raised piece of steel. *Held:* Defendant's evidence that plaintiff fell, that her shoe heel was knocked off and was found on the floor of the bus, and tending to establish the fact of plaintiff's injury, is properly considered on defendant's motion to nonsuit as tending to corroborate and make clear plaintiff's evidence, and the motion to nonsuit was properly overruled.

**7. Evidence § 18—**

Testimony of statements made by plaintiff as to her physical condition and suffering after the injury in suit, is competent for the purpose of corroborating her testimony at the trial.

**8. Trial § 17—**

The general admission of evidence competent for a restricted purpose will not be held for reversible error in the absence of a request at the time that its admission be restricted.

**9. Appeal and Error § 39f—**

Exceptions to the charge will not be sustained when the charge read contextually fails to disclose error which is prejudicial.

SEAWELL, J., dissents.

BARNHILL, J., concurring.

APPEAL by defendant from *Bone, J.,* at June Civil Term, 1947, of ROBESON.

Civil action to recover damages for personal injuries allegedly resulting from actionable negligence of defendant.

Plaintiff alleges in her complaint these facts, briefly stated:

(1) That on 7 November, 1945, plaintiff purchased a ticket from defendant, a common carrier of passengers for hire, for safe transportation on one of its buses from Laurinburg to Wilmington, in the State of North Carolina, and became a passenger thereon.

(2) That the bus was in negligent, careless and defective condition in that there protruded from the floor or step of said bus and near the door thereof, a piece of metal or loose fastening, which was not discernible and could not be observed by passengers, including the plaintiff, while leaving said bus.

(3) That on said date as plaintiff undertook to alight from the said bus, under the instructions and directions of defendant's servant, agent and employee, the heel of her shoe became engaged and entangled with the aforesaid loose piece of metal, protruding and partially fastened to the floor or step of the bus, so that and thereby plaintiff was violently thrown against the side of said bus, down the steps thereof, by reason of which she was injured in manner and to extent specified, to her great damage.

(4) And that said injuries received by plaintiff proximately resulted from negligence of defendant in respect to the loose piece of metal in manner specified in detail.

Defendant, answering the complaint, denied the allegations of negligence, and pleaded the contributory negligence of plaintiff.

These facts appear from the record to be uncontroverted: On 7 November, 1945, plaintiff purchased a ticket from defendant, a common carrier of passengers for hire, for transportation on one of its buses from Laurinburg to Wilmington in the State of North Carolina, and became a passenger on a through bus which had a fifteen or twenty minutes stop at Lumberton. The bus, with a seating capacity of thirty-three, had aboard around 37 or 38 passengers, of whom four or five were standing when the bus reached Lumberton. When the bus stopped there, the driver told the passengers the length of time the bus would remain. Plaintiff, who was sitting on the front seat on the right-hand side of the bus on the outside of two seats, put her right hand on the guard rail, right in front of where she was sitting, and, preceded by three or four other passengers and the driver, started to get off the bus and fell, sustaining injury—of which she complains.

Plaintiff, as witness for herself, testified in the trial court: "When we reached Lumberton, the driver of the bus announced to the passengers that we had a twenty-minute stop, and I decided to get off to get some magazines . . . and when I started . . . I had my hand on the handrail, and I had shoes with heels lower than these I have on, I don't wear high heel shoes, and the next thing I remember I was lying crumpled on the platform of the bus and the weight going on my left arm, and when I roused up the driver was helping me to get up, and he said, 'I am very sorry that it happened,' and he picked me up and put me in the seat back of the driver's seat and I was losing much blood of the left hand . . . I wondered why I fell, and the driver was standing there, he was trying to stop the blood, and I looked over and said that was exactly what tripped me, and there was my heel still in the raised piece of steel and my shoe heel was caught in this piece of steel and it was still there. The heel was torn completely from the shoe, . . . it was a very old bus . . . I did look where I was going . . . on this occasion because I caught the handrail as I started to get off the bus . . . I wondered why I fell and while I was sitting in the seat where the bus driver helped me to the seat, I looked and there was my heel caught in this raised piece of steel in the bus, and that is exactly where I fell and there was my shoe heel and it was right where it was pulled off my shoe, and I wear good substantial shoes."

Then on cross examination, plaintiff continued: "On this day I got on the bus over in Laurinburg,—I went up these same steps which I started down when I got to Lumberton. I couldn't see anything wrong with them at that time. I didn't see any piece of metal sticking up. I looked when I went up these steps, sure. I don't remember any piece of metal sticking up at that time,—I didn't see any . . . in Lumberton . . . I got off but I looked where I was going. I was looking down, the steps were down. I looked where I was putting my foot. I did not see metal sticking up."

On the other hand, the driver of defendant's bus, as witness for defendant, testified: ". . . I got off the bus . . . I was standing by the door . . . I saw her when she started out the door . . . she had her right hand on the guard rail and started down, first step . . . left foot hit the floor of the bus at this angle, her toe went over this way (indicating) and knocked the heel off of her shoe. She had her hand on the guard rail and she fell over and her left hand hit the hinge of the door . . . I jumped up on the step and helped her up. The lady sitting behind me got up and let her sit there. I got my first aid kit, wrapped her hand and put first aid bandage on it. Her hand was cut . . . and . . . bleeding. There was not a piece of metal sticking up on the step of that bus. The well of the bus steps is constructed all in one piece,

that type of bus. There was no metal strip sticking up on that step. The heel of her shoe came off. I found the heel of the shoe lying on the floor of the bus and picked it up. The best I recall it was two tacks that was holding the heel . . . I would say it was a medium heel . . . That heel was not caught in any part of the step. I picked the heel up. She did not show me the heel at all."

Then on cross-examination the driver continued: "I got off, then the passengers were lined up behind me coming out . . . They came out at the door. The bus was facing east,—I was facing west. The passengers . . . walked east and turned south. They come down the passageway and turned . . . The floor of the bus comes clean up to the windshield, level all the way up; no step there at all. The only step is after they turn and come south, two steps there. The guard rails are on the right-hand side as you start down the steps and on the left-hand side of the steps. A passenger sitting on the right side,—the rail would be immediately in front. There is a partition between the passenger sitting in front and the step . . . Mrs. Humphries . . . I helped her up off of the floor here in Lumberton. She was down on the floor where the first step is,—she didn't get down that first step. There is not a piece of metal strip that runs directly across that bus. The bottom of the floor is covered with linoleum. The linoleum is glued down,—no metal strips on it,—just exactly like this floor is put down. The steps are all metal. That is not where I found Mrs. Humphries' heel, it was up on the floor of the bus."

Much evidence was offered bearing upon the issue of damages. And the case was submitted to the jury upon issue of negligence, contributory negligence, and damages. The jury found that plaintiff was injured by the negligence of defendant, as alleged in the complaint, and that she, by her own negligence, did not contribute to the injury complained of, as alleged in the answer, and assessed damages. From judgment for plaintiff on the verdict, defendant appeals to Supreme Court and assigns error.

*Varser, McIntyre & Henry for plaintiff, appellee.*
*McKinnon & Seawell for defendant, appellant.*

WINBORNE, J. Defendant presents to this Court five questions for decision.

First: The denial of its motions for judgment as of nonsuit is stressed for error. In this connection when pertinent principles of law are applied to the evidence shown in the record, taken in the light most favorable to plaintiff, the rulings of the court below are appropriate.

Where the relation of carrier and passenger exists the carrier owes to the passengers the highest degree of care for their safety so far as is

consistent with the practical operation and conduct of its business. But the liability of the carrier for injuries to a passenger is based on negligence. The carrier is not an insurer of the safety of passengers. See *White v. Chappell,* 219 N. C., 652, 14 S. E. (2d), 843, and cases cited.

In actions against common carriers, the courts are generally agreed that when a passenger is injured by machinery and appliances wholly under the carrier's control, this fact is sufficient *prima facie* to show negligence. *Saunders v. R. R.,* 185 N. C., 289, 117 S. E., 4. See also 20 R. C. L., 188, Negligence, Sec. 157.

Ordinarily a *prima facie* showing of negligence carries the case to the jury in the absence of evidence establishing contributory negligence as a matter of law. *Morris v. Johnson,* 214 N. C., 402, 199 S. E., 390; *Woods v. Freeman,* 213 N. C., 314, 195 S. E., 812.

Applying these principles to the present case, the evidence of plaintiff tending to show that as she, a passenger on defendant's bus, was walking from her seat in the bus for the purpose of alighting, her shoe heel caught in a raised piece of steel in the bus and she tripped and fell, is sufficient to make a *prima facie* showing of negligence.

And in considering motion for judgment as of nonsuit at the close of all the evidence, so much of defendant's evidence as is favorable to the plaintiff, or tends to explain and make clear that which has been offered by the plaintiff may be considered; but that which tends to establish another and different state of facts, or which tends to contradict or impeach the evidence offered by plaintiff is to be disregarded. See *Atkins v. Transportation Co.,* 224 N. C., 688, 32 S. E. (2d), 209, and cases cited there.

The evidence offered by defendant in the case in hand tends to make clear and to corroborate the evidence offered by plaintiff that she fell, that the heel of her shoe was knocked off, that the shoe heel was found on the floor of the bus, that the bus driver helped her to get up from the floor and put her in seat back of the driver's seat, and that her hand was bleeding, and he gave first aid to it. This evidence may be considered on the motion for judgment as of nonsuit. But evidence that tends to contradict or impeach the evidence offered by plaintiff will be disregarded on such motion. Hence the motion for judgment as in case of nonsuit was properly overruled. *Lindsey v. R. R.,* 173 N. C., 390, 92 S. E., 166.

The second question relates to several exceptions to the ruling of the court in admitting, over defendant's objection, testimony reciting statements made by plaintiff to others as to her physical condition and suffering after she fell on the bus. The evidence to which these exceptions relate is competent for purpose of corroboration, and the record fails to show that appellant asked, at the time, that its purpose be restricted.

In such case the admission of the statements will not be ground for exception. Rule 21 of Rules of Practice in the Supreme Court, 221 N. C., 544.

The third, fourth and fifth questions pertain to the charge of the court to the jury to the effect that things were said that ought not to have been said, and things that ought to have been said were left unsaid. But a careful reading of the charge fails to disclose prejudicial error in either of these aspects.

No error.

SEAWELL, J., dissents.

BARNHILL, J., concurring: The testimony of a witness comes to us in printed form after it has first been interpreted and put in narrative form by some third party. For that reason, occasionally, it is difficult to determine just what the witness said or intended to say. This would seem to be one of those cases.

The plaintiff testified in part: "I looked over . . . and there was my heel still in the raised piece of steel and my shoe heel was caught in this piece of steel and it was still there . . . I looked and there was my heel caught in this raised piece of steel in the bus." This is the only description of the alleged cause of the accident.

If the piece of steel was "raised" as the curb of a sidewalk is raised above the level of the street or a door sill extends above the level of the floor, there is no evidence tending to show that it was other than a part of the standard construction of passenger buses. Hence no negligence is made to appear.

On the other hand, if there was a piece of steel torn or worn from its proper setting and projecting above its normal level, then it was in a state of bad repair and negligent maintenance of the passageway of the bus may be inferred.

I am persuaded the plaintiff intended to convey the meaning first indicated. Even so, the second is also a permissible interpretation of her testimony, especially in view of the statement that the shoe heel was "caught in this piece of steel." As the question is not what we think the witness meant, but what is the meaning of the testimony when interpreted in the light most favorable to the plaintiff, I am compelled to concur in the conclusion that the court below committed no error in overruling the motion to dismiss as in case of nonsuit.

In negligence cases, ordinary care is the standard of care required of all alleged tort-feasors. *Rea v. Simowitz*, 225 N. C., 575. But "ordinary care," when that term is used in defining the duty a transportation company owes to its passengers, means "the highest degree of care consistent

with the practical operation and conduct of its business." One is the standard and the other is the degree of care necessary to measure up to the standard. While there is a distinct difference, I suspect this difference, to the mind of a lay jury, is the difference between Tweedledum and Tweedledee. In any event, on this record, I am unwilling to say that the error in the charge of the court in this respect was sufficiently harmful to require a new trial.

It follows that I concur in the majority opinion.