STATE OF NORTH CAROLINA v. LYDIA ANN REID BATTLE

No. 697SC159

(Filed 28 May 1969)

**1. Criminal Law §§ 87, 175— leading questions by solicitor**

The allowance of leading questions by the solicitor is a matter entirely within the discretion of the trial judge, and his rulings thereon will not be reviewed on appeal in the absence of an abuse of discretion.

**2. Criminal Law § 42; Homicide § 20— admission of knife found near crime scene**

In this prosecution for second degree murder by stabbing the deceased, the court did not err in the admission of a knife found near the crime scene some eight days after the incident occurred where there was testimony that it looked like the knife seen in defendant's possession shortly before deceased was killed, a weapon being admissible if there is evidence tending to show that it was used in the crime.

**3. Criminal Law §§ 95, 113— evidence competent for corroboration — request for instructions**

The trial court is not required to instruct the jury that evidence competent solely for the purpose of corroboration be so restricted where defendant makes no request for such an instruction.

**4. Criminal Law § 89— slight variances in corroborating testimony — admissibility**

The trial court did not err in the admission for corroborative purposes of testimony by the sheriff as to what certain of the State's witnesses had told him during his investigation of the crime where the sheriff's testimony was substantially the same as the direct testimony of the witnesses, notwithstanding the testimony of the sheriff and the witnesses differed in some respects.

**5. Homicide § 24—   instructions — presumptions arising from use of deadly weapon**

In this second degree murder prosecution, the trial court did not err in charging the jury as to the presumptions raised by a killing with a deadly weapon where the State's evidence tended to show that deceased was stabbed to death, that defendant had a knife shortly before deceased was killed, and that defendant stated that she had cut deceased's throat.

**6. Homicide § 28—   failure to instruct on self-defense**

In this homicide prosecution, the trial court did not err in failing to instruct the jury on the issue of self-defense where the evidence shows that although deceased slapped defendant, defendant thereafter became the aggressor and deceased attempted to avoid a confrontation, and the evidence fails to show that defendant was in real or apparent apprehension of great bodily harm.

**7. Criminal Law § 118—   instructions — contentions of the parties**

In this homicide prosecution, the court did not err in stating the contentions of the parties; had defendant desired that further or different statements of her contentions be presented to the jury, she should have requested such instructions in apt time.

APPEAL by defendant from *Bundy, J.,* 7 October 1968 Criminal Session, Superior Court of NASH.

Defendant was charged in a bill of indictment with murder in the first degree. Upon the call of the case the solicitor announced in open court that he would not seek a verdict of murder in the first degree, but would seek a verdict of guilty of murder in the second degree or manslaughter. The defendant entered a plea of not guilty and trial was held.

On 13 May 1968, the defendant, Johnny Witherspoon and several other parties were together at Hamp Eatman's, a "piccolo joint" in Wilson County. The defendant and Johnny Witherspoon, along with seven other people, left Hamp Eatman's and traveled to the home of one Daisy Bell Lucas who lives in Nash County. When the parties arrived at Daisy Bell Lucas', the defendant got out of the car first, and then Johnny Witherspoon followed. As Witherspoon got out of the car he dropped his knife which was picked up by a young boy named Cornel High. The defendant took the knife from the young boy, and an argument ensued between the defendant and Witherspoon, apparently over the knife. The defendant then went inside Daisy Bell Lucas' house. Witherspoon came in behind her, and while inside the house he asked the defendant to "be with him" and "to go outside with him", but defendant refused. A few minutes after the parties had gone into Daisy Bell Lucas' home, Roy Lucas came into the house and told those inside that someone had fallen off of

the back porch and was hurt. Everyone went out on the porch and the defendant began to wipe the man's face with a towel whereupon Witherspoon cursed her. Defendant stopped wiping the injured man's face and pulled Witherspoon off of the porch and held him on the ground. Roy Lucas separated Witherspoon and defendant, and immediately after doing so, Witherspoon slapped defendant. Defendant picked up a board and was going to hit the deceased when Roy Lucas took the board away from her. Lucas told Witherspoon to leave the yard and he would pick him (Witherspoon) up in a few minutes and take him home. Witherspoon started to leave but turned around and came back. Defendant told Lucas that she was going to get Witherspoon because he had no business slapping her. Witherspoon stated "I know she will hurt me", and requested Roy Lucas not to let the defendant hurt him. Witherspoon then left and went around the house with the defendant in pursuit. He ran down the road with the defendant behind him. A few minutes later Witherspoon came back to Daisy Bell Lucas' house and sat down beside a bush in the yard. Sometime later, the defendant came up behind Witherspoon and hit him over the head with a jar. Witherspoon and the defendant then began to fight. Roy Lucas testified that as he backed his car up, he saw the defendant, by the reflection of his headlights, hitting Witherspoon with a brick. Curtis Vick testified that "Witherspoon was trying to get up and she was hitting him in the face with her fists." Roy Lucas stated, "Witherspoon was not doing anything; he couldn't do anything. He was lying flat out." Roy Lucas also stated that the defendant was hitting Witherspoon with a brick. Kinzie Allen stated that the defendant returned to the back of the house approximately 15 or 20 minutes after she had left following Witherspoon and stated, "I cut the . . . s.o.b.'s throat." Allen stated that the defendant had a knife in her hand when she made this statement.

Witherspoon was taken to the Wilson Memorial Hospital by James High. He was dead upon arrival at the hospital. W. R. Williams, the Nash County Coroner, testified that in his opinion Witherspoon came to his death because of the loss of blood from a wound on the left side of the lower part of his neck. Approximately one week later, Daisy Bell Lucas found a knife in her front yard located approximately 20 feet from where defendant and Witherspoon were last fighting. Witnesses stated that it looked like the same knife Johnny Witherspoon had dropped when he got out of the car that night.

The jury returned a verdict of guilty of manslaughter. From a sentence of imprisonment for 12 years, defendant appealed.

*Attorney General Robert Morgan by Staff Attorney Mrs. Christine Y. Denson for the State.*

*Farris and Thomas by Robert A. Farris for defendant appellant.*

MORRIS, J.

Defendant brings forward several assignments of error, all of which we find to be without merit. The evidence taken in the light most favorable to the State, as we are required to do, *State v. Bell,* 270 N.C. 25, 153 S.E. 2d 741, was clearly sufficient to withstand a motion for nonsuit.

[1]  The defendant argues that the trial judge erred in allowing the solicitor to ask leading questions. "The allowance of leading questions is a matter entirely within the discretion of the trial judge, and his rulings will not be reviewed on appeal, at least in the absence of a showing of abuse of discretion." Stansbury, N. C. Evidence 2d, § 31.

[2]  Defendant argues that the knife found by Daisy Bell Lucas, some eight days after the incident in question was not admissible as evidence because it was not sufficiently identified. Luther Deans testified that State's exhibit No. 1 looked like the same knife that Johnny Witherspoon dropped when he got out of the car that night. There was evidence that the defendant took possession of this knife. Cornel High stated that the State's exhibit No. 1 looked like the knife he found, and which the defendant took out of his hand. Daisy Bell Lucas stated that State's exhibit No. 1 looked like the knife she found under the bush. In order to be admissible into evidence, testimony need not show, specifically, that this was the weapon used in the crime. It is sufficient if there is evidence tending to show that this weapon was used. Stansbury, N. C. Evidence 2d, § 118; *State v. Macklin,* 210 N.C. 496, 187 S.E. 785. This assignment of error is overruled.

[3, 4]  The next question relates to exceptions taken to the testimony of Sheriff G. O. Womble concerning statements made to him by Daisy Bell Lucas, Kinzie (Cokey) Allen, Emma Jane Crumel, and Curtis Vick during the course of his investigation. When Sheriff Womble first started to testify as to statements made to him by Daisy Bell Lucas, the trial judge correctly instructed the jury that this testimony was not to be considered as substantive evidence. but only as evidence corroborating Daisy Bell Lucas, if, in fact, the jury found that this evidence did corroborate her. When Sheriff Womble began to testify as to what the other witnesses had told him during

the course of his investigation, the trial judge told the jury that this same instruction would apply, but he did not repeat the instruction in full. We note that the defendant did not request that this testimony be restricted; therefore, the trial judge was not required to restrict the evidence. See *Humphries v. Coach Co.* 228 N.C. 399, 45 S.E. 2d 546, where the Court stated, "The evidence to which these exceptions relate is competent for purpose of corroboration, and the record fails to show that appellant asked, at the time, that its purpose be restricted. In such case the admission of the statements will not be ground for exception. Rule 21 of Rules of Practice in the Supreme Court, 221 N.C., 544." Also see *State v. Petry*, 226 N.C. 78, 36 S.E. 2d 653; *State v. Perry*, 226 N.C. 530, 39 S.E. 2d 460; *Harris v. Burgess*, 237 N.C. 430, 75 S.E. 2d 248; and *State v. Lee*, 248 N.C. 327, 103 S.E. 2d 295.

The testimony of Sheriff Womble relating to what the witnesses told him during his investigation of the crime, and the testimony of the witnesses themselves was different in some respects. However, we do not think this variance was fatal. The testimony of Sheriff Womble was substantially the same as the direct testimony of the witnesses. His testimony did not tend to impeach the testimony of the witnesses whom he was corroborating; therefore, the case of *State v. Bagley*, 229 N.C. 723, 51 S.E. 2d 298, is distinguishable. A slight variance in the direct testimony and the corroborating testimony will not render the latter inadmissible. The credibility of the testimony was for the jury. *State v. Walker*, 226 N.C. 458, 38 S.E. 2d 531; and *State v. Case*, 253 N.C. 130, 116 S.E. 2d 429.

**[5]** Defendant has taken several exceptions to the instructions given to the jury by the trial court. He argues that the trial court erred in charging the jury as to the presumptions raised by the use of a deadly weapon because the State failed to prove that the defendant used a deadly weapon or had in fact killed the deceased. We disagree. The defendant was seen with Witherspoon's knife on the night in question. She was seen beating Witherspoon while he was lying on the ground. Witherspoon appeared to be dying when the defendant left him, and it appeared that he had been stabbed in the neck. Kinzie Allen testified that the defendant came to the back of the house after the fight was over with a knife in her hands and stated, "I cut the . . . s.o.b.'s throat." We think that the trial court correctly charged the jury on the presumptions raised by a killing with a deadly weapon. 4 Strong, N. C. Index 2d, Homicide, § 14, p. 207. The court correctly charged the jury on the question of provocation. 4 Strong, N. C. Index 2d, Homicide, § 6, p. 197.

**[6, 7]**    The trial court did not err in failing to charge the jury on the issue of self-defense. The evidence shows that the deceased slapped the defendant. But, following this, the defendant stated that she was "going to get" the deceased. Deceased asked Roy Lucas not to let the defendant hurt him. The defendant then followed the deceased as he left the yard, and then back into the yard. She then came up behind the deceased while he was behind a bush and hit him over the head with a jar. She was seen hitting the deceased with a brick. One witness stated that the deceased was trying to get up, and another stated that he was not moving. Both stated that the defendant was beating him. All the evidence shows that after the defendant was slapped by the deceased, she became the aggressor and the deceased was attempting to avoid a confrontation. The State's evidence fails to disclose that the defendant was in real or apparent apprehension of great bodily harm. The defendant offered no evidence. "In other words, there must be evidence from which the jury may find that the party assailed believed at the time that it was necessary to kill his adversary to prevent death or great bodily harm, before he may seek refuge in the principle of self-defense, and have the jury pass upon the reasonableness of such belief." *State v. Rawley,* 237 N.C. 233, 74 S.E. 2d 620. Also, see *State v. Deaton,* 226 N.C. 348, 38 S.E. 2d 81. The trial court did not err in stating the contentions of the parties. The trial court's statement of the contentions of the parties need not be of equal length, *Durham v. Realty Co.,* 270 N.C. 631, 155 S.E. 2d 231, although, in the present case, they were approximately the same length. We find the charge to be fair and impartial, and in compliance with G.S. 1-180. If the defendant desired that further or different statements of her contentions be presented to the jury, she should have called this to the court's attention in apt time. *Peterson v. McManus,* 210 N.C. 822, 185 S.E. 462.

In the trial below we find

No error.

MALLARD, C.J., and CAMPBELL, J., concur.