State v. Shelton

———————

STATE OF NORTH CAROLINA v. CLINTON RICHARD SHELTON, III

No. 7419SC891

(Filed 19 March 1975)

1. **Homicide § 9— self-defense — use of force apparently necessary**

   In the exercise of his lawful right of self-defense, a person may use such force as is necessary or apparently necessary to protect him from death or great bodily harm, and in this connection, a person may kill even though to kill is not actually necessary to avoid death or great bodily harm if he believes it to be necessary and has reasonable ground for that belief.

**2. Criminal Law § 113; Homicide § 28— facts tending to show self-defense — failure to give instruction erroneous**

The trial court in this second-degree murder prosecution erred in failing to instruct the jury on defendant's right to act in self-defense where defendant's evidence tended to show that he and his companions attempted to leave a restaurant to avoid trouble, they were prevented from doing so by the victim's unprovoked assault on one of defendant's companions, there was an ensuing scuffle during which defendant saw a pistol fall to the floor, as defendant picked up the pistol he saw one of the victim's companions appear to draw a shiny object from his belt, and defendant instantly fired the pistol which he had just picked up.

APPEAL by defendant from *Winner, Judge.* Judgments entered 7 May 1974 in Superior Court, ROWAN County. Heard in the Court of Appeals 16 January 1975.

Defendant was charged in separate indictments with the first-degree murder of Bobby Gene Basinger and with assault with a deadly weapon with intent to kill inflicting serious injury upon Leonard Cresswell. He was tried for second-degree murder and for the assault as charged, having pled not guilty to both charges.

At trial the State's evidence tended to show: Shortly before 12:30 a.m. on 23 March 1974 defendant entered Irby's Restaurant in Kannapolis accompanied by Leo and Sandra Singleton and that couple's child. The Singletons ordered food. While they were waiting to be served, Basinger, a customer in the restaurant, spoke to Mrs. Singleton, trying to attract her attention. The Singletons and defendant started to leave. As Leo Singleton started out the door, Basinger kicked him and Singleton turned and began grappling with Basinger. Singleton broke loose and again started out the door, and defendant, who had been standing directly behind Singleton, fired three shots rapidly from a small pistol. One bullet struck and blinded Leonard Cresswell, who had been sitting in the booth with Basinger. One bullet struck Basinger in the left side, causing a massive hemorrhage which, in the opinion of the physician who performed the autopsy, resulted in his death. Neither Cresswell nor Basinger had a weapon on his person at any time during the scuffle and subsequent shooting.

The defendant's evidence tended to show: Defendant, age 16, on 22 March 1974 lived in Kannapolis where his best friend was Leo Singleton. After leaving work that evening at 11:00 p.m. he and the Singletons and their baby stopped at Irby's Res-

taurant on their way to Asheville. They placed an order, and while defendant and Leo Singleton played pinball, Sandra walked over to the opposite end of the room to visit with her aunt. Defendant noticed a man whom he later learned to be Basinger trying to speak to Sandra. A few minutes later Leo Singleton decided that they should leave, and as they were going, Basinger stuck his foot in the aisle and tripped Singleton. Singleton proceeded to the door, but Basinger grabbed him and kicked him. A scuffle ensued, and defendant saw a gun fall on the floor next to where the two were fighting. Defendant picked up the gun "so nobody would pick it up and start shooting." Someone then yelled, "get them," and when defendant straightened up he saw that a man he later learned was Leonard Cresswell had stood up in the booth where Basinger and Cresswell had been sitting. Cresswell's hand was at his belt, and defendant saw "a shiny object within his grasp." Scared by this shiny object into "a state of shock," and afraid that Cresswell was about to shoot him and Singleton, defendant quickly fired three times at Cresswell. Defendant then ran outside, traveled with the Singletons to Asheville, where he threw the gun into a river, and turned himself in to law enforcement officers approximately 16 days later.

The jury returned verdicts of guilty in both cases and from judgments imposing prison sentences, defendant appealed.

*Attorney General Rufus L. Edmisten by Associate Attorney Robert W. Kaylor for the State.*

*Earl J. Fowler, Jr. for defendant appellant.*

PARKER, Judge.

In apt time the defendant requested that the court instruct the jury with regard to the law applicable to defendant's right to act in self-defense. The court refused to do so, and instead instructed the jury:

> "Members of the jury, the court instructs you that in this case, there is no evidence of any legal justification that has been presented in the trial of this case."

[1] The right of self-defense rests upon necessity, real or apparent. In the exercise of his lawful right of self-defense, a person may use such force as is necessary or apparently necessary to protect him from death or great bodily harm. "In this

connection, the full significance of the phrase 'apparently necessary' is that a person may kill even though to kill is not actually necessary to avoid death or great bodily harm, if he believes it to be necessary and has a reasonable ground for that belief. The reasonableness of his belief is to be determined by the jury from the facts and circumstances as they appeared to him at the time of the killing." *State v. Gladden,* 279 N.C. 566, 572, 184 S.E. 2d 249, 253 (1971).

[2]   In this case, defendant's evidence, if believed by the jury, would support the following findings: Defendant and his friends, seeking to avoid trouble, attempted to leave the restaurant. They were prevented from doing so by Basinger's unprovoked assault on Singleton. During the ensuing fight, defendant saw a pistol fall to the floor. This gave notice of the possibility that others in the room might also be armed. As defendant straightened up after picking up the pistol, Cresswell, one of Basinger's companions, appeared to be drawing "a shiny object" from his belt. Thinking that this object was another weapon which Basinger's companion was about to use in an attack upon Singleton and upon him, defendant instantly reacted by firing the pistol which he had just picked up. In so doing, defendant believed it to be necessary in order to avoid death or great bodily harm and he had reasonable ground for that belief.

Certainly the jury might disbelieve some or all of defendant's evidence. Certainly also the jury, even had they believed him, might well find that he did not act under a reasonable apprehension that it was necessary for him to do so under the circumstances as they appeared to him in order to save himself from death or great bodily harm, or that he used more force than reasonably appeared to be necessary. It was, however, for the jury and not for the court to make such findings. By withdrawing these matters from jury consideration, the court committed error for which defendant is entitled to a

New trial.

Judges MORRIS and HEDRICK concur.