STATE OF NORTH CAROLINA v. HARVEY BERRY

No. 7725SC681

(Filed 24 January 1978)

**1. Homicide § 28.1— self-defense—no evidence requiring instruction**

The trial court did not err in failing to instruct the jury on self-defense where there was testimony by defendant and his wife that the victim threatened to cut defendant and that the victim had a knife in his hand after he was shot, but there was no evidence that defendant had any apprehension that the victim would kill him or do him serious bodily harm, and defendant never contended that he acted in self-defense.

**2. Indictment and Warrant § 14— second indictment returned—no grounds for quashal**

The trial court did not err in denying defendant's motion to quash the bill of indictment upon which he was arraigned when another indictment charging the same offense was pending since such denial in no way prejudiced defendant.

**3. Criminal Law § 86.2— defendant's past record—questions not asked in bad faith—curative instruction**

The trial court did not err in denying defendant's motion for mistrial based on a question pertaining to his past record asked defendant by the district attorney on cross-examination, since there was no showing that the district attorney did not ask the question in good faith, and any error was cured by the strong instruction given by the judge to the jury charging them not to consider for any purpose any inference from the question asked and to dismiss the same from their minds.

**4. Jury § 7.1— motion to challenge array—denial proper**

The trial court did not err in denying defendant's motion "to challenge the array and quash the venire after it was discovered that the array of jurors

chosen for the November session was switched and summoned to the October session, then switched back and resummoned to the November session."

**5. Jury § 3.1— jury service—disqualification to serve for two succeeding years**

It is actual service as a juror rather than a mere summons for jury duty which disqualifies a person for service for the next two years. G.S. 9-3.

ON writ of certiorari to review judgment of *Briggs, Judge,* entered 20 November 1975 in Superior Court, BURKE County. Heard in the Court of Appeals 9 January 1978.

By indictment proper in form defendant was charged with the murder of Ronald Whittson on 25 October 1974. He was placed on trial for second-degree murder and pled not guilty.

Evidence presented by the State is summarized in pertinent part as follows:

On the evening in question defendant, Whittson (defendant's brother-in-law), Tommy Crafton and several others gathered at defendant's mobile home where they proceeded to drink whiskey and play musical instruments until about 11:30 p.m. At that time Whittson broke a drumstick after which Crafton jokingly suggested that he and Whittson "fall outside" and settle the matter. Defendant then remarked that he would "fall outside" with Whittson after he went to the bathroom. Defendant and Whittson went outside where defendant hit Whittson twice, knocking him down. Whittson reached around defendant to keep him from swinging anymore. Defendant then told Whittson to "stand here until I get back and I will shoot you".

Defendant went into the trailer, returned with a gun in his hand and told Whittson again that he would shoot him. Whittson replied, "You'll have to", after which defendant stepped to within two feet of him and fired one shot. Defendant's wife told defendant he had shot her baby brother after which defendant said, "Let the son-of-a-bitch die".

Whittson was carried to the hospital where he died from a gunshot wound in his chest. As he was being removed from the car to be carried into the hospital a small knife fell from his pocket.

Defendant's evidence tended to show: After the drumstick incident, he and Whittson went outside and scuffled in a playful

manner. Whittson became "serious" and threatened to cut defendant. Defendant went into the trailer, got his gun and returned outside "to make them all leave". As defendant confronted Whittson, defendant was holding the gun by his side, and Whittson struck at the gun with his left hand, causing it to go off. Defendant did not see any object in Whittson's hand and did not intend to shoot him. Defendant denied making any statement about letting the s.o.b. die.

Other evidence is set forth in the opinion.

The court submitted the case on second-degree murder, voluntary manslaughter, involuntary manslaughter or not guilty. The jury found defendant guilty of involuntary manslaughter and from judgment imposing prison sentence of not less than seven nor more than ten years, defendant appealed.

*Attorney General Edmisten, by Associate Attorney Thomas H. Davis, Jr., for the State.*

*Simpson, Baker & Aycock, by Samuel E. Aycock, for defendant appellant.*

BRITT, Judge.

[1]  Defendant contends first that the trial court erred in failing to instruct the jury on self-defense. We find no merit in this contention.

We recognize the principle that the trial court must instruct the jury on self-defense when that question is raised by the evidence, even in the absence of a request to do so. *State v. Dooley*, 285 N.C. 158, 203 S.E. 2d 815 (1974). However, we do not think the evidence in this case raised the question of self-defense.

In his opening statement to the jury, before any evidence was introduced, defendant's counsel stated that defendant contended that the shooting was an accident—"a pure accident and misadventure". His statement included no contention that defendant acted in self-defense.

A careful review of the testimony of witnesses for the State, including their cross-examinations, discloses no suggestion of self-defense. A careful review of the testimony of defendant's witnesses, with the possible exception of himself and his wife, discloses no suggestion of self-defense.

State v. Berry

In his testimony defendant stated, among other things, that he, Whittson, Crafton and Arney got together around lunchtime; that Whittson and Crafton helped him move a C.B. antenna and some radio equipment; that before dinner they had two or three drinks of whiskey together; that they ate dinner at Whittson's mother's house after which they returned to defendant's trailer; that they proceeded to drink whiskey and play musical instruments for several hours; that he and Whittson went into the yard and began wrestling—"just playing mostly"; that Whittson got mad and stated that although he liked defendant he was going to cut him; that he had never had any trouble with Whittson before; that he went into the house, got the loaded gun and returned to the yard, holding the gun by his side; that the reason he went into the trailer and got the gun was to "make them all leave and get rid of all the mess going on"; that he then went toward the corner of the trailer where Whittson was standing; that he did not point the gun at anybody; that when he confronted Whittson, Whittson struck at the gun with his left hand, hitting defendant's wrist; that "when he hit my wrist it felt like the gun was going to go out of my hand and I squeezed it tight to hold onto it and the gun went off"; that he was very drunk and did not see anything in Whittson's hand, did not intend to pull the trigger and did not intend to shoot Whittson; and that he thought Whittson was playing when he fell after the gun fired.

On cross-examination defendant stated that Whittson had a knife in his hand when they scuffled; that he brought the gun out of the house to see if he could scare *them* off; that he was very drunk at the time. He then stated that he was not sure that Whittson had a knife when they were scuffling; that he (defendant) was so drunk; that Whittson swung, hit the gun and knocked it up.

In her testimony defendant's wife stated that after Whittson and defendant scuffled defendant told Whittson he would not let him cut him; that Whittson said, "You'll have to blow my brains out because I will do it"; that defendant then went into the house and Whittson went around the trailer supposedly to use the bathroom; that defendant came out of the house with the gun in his hand; that Whittson had nothing in his hand at that time; that after Whittson was shot, she helped put him in an automobile to

go to the hospital; and at that time he had an opened knife in his right hand.

A person may kill in self-defense if he is without fault in bringing on the affray and it is necessary, or appears to him to be necessary, to kill his adversary to save himself from death or great bodily harm, the reasonableness of his apprehension being for the jury to determine from circumstances as they appear to him. *State v. Deck*, 285 N.C. 209, 203 S.E. 2d 830 (1974); *State v. Shelton*, 25 N.C. App. 207, 212 S.E. 2d 545 (1975). But, where there is no evidence that defendant was in apprehension, real or apparent, that the decedent was going to kill him or do him serious bodily harm, the court is not required to charge on the law of self-defense. *State v. Rawley*, 237 N.C. 233, 74 S.E. 2d 620 (1953); *State v. Battle*, 4 N.C. App. 588, 167 S.E. 2d 476 (1969).

While there was testimony by defendant and his wife in the case at hand that Whittson threatened to cut defendant, and that he had a knife in his hand after he was shot, there was no evidence that defendant had any apprehension that Whittson would kill him or do him serious bodily harm. At no time in his testimony did defendant state that he was afraid of Whittson or that he got his gun to protect himself from Whittson. To the contrary, he testified that he got his gun for the purpose of making Whittson and the others leave, that he did not intentionally point it at anyone and that the gun fired accidentally. "Mere language is not sufficient to support the plea of self-defense, since it is required that defendant be put in fear of death or great bodily harm by an actual or threatened assault. The question of self-defense does not arise when there is no evidence that defendant acted in apprehension of such danger, real or apparent. . . ." 6 Strong's N.C. Index 3d, Homicide § 9.1, p. 544.

Furthermore, it will be noted that defendant was convicted of involuntary manslaughter. One of the elements of that offense is that the act was *unintentional. Ibid* § 6.1. *See also State v. Walker*, 34 N.C. App. 485, 238 S.E. 2d 666 (1977).

We hold that the trial court did not err in failing to charge the jury on self-defense.

[2] Defendant contends next that the trial court erred in denying his motion to quash the bill of indictment upon which he was

arraigned when another indictment charging the same offense was pending. This contention has no merit.

The record reveals that a bill of indictment charging defendant with murder was returned at the February 1975 session of the court; that a second indictment charging murder was returned at the April 1975 session of the court; and that the only difference in the bills is that on the first one the grand jury foreman certified "this bill found True A True Bill" and on the other one "this bill found yes A True Bill."

Defendant was arraigned on the second bill after which defendant moved to quash it "on the grounds that it was improperly taken to the grand jury; that there was a prior bill of indictment returned during the February term of the grand jury and that the second bill of indictment on which the defendant has been arraigned is not valid for that reason".

For the reasons stated in *State v. Moffitt*, 9 N.C. App. 694, 177 S.E. 2d 324 (1970), *cert. denied* 281 N.C. 626, 190 S.E. 2d 472 (1972), we find no validity in the grounds given by defendant at trial.

On appeal, defendant argues that while he probably made a mistake at trial in asking that the second bill rather than the first one be quashed, that G.S. 15A-646 provides that in such cases the first instrument charging the offense *must* be dismissed by the judge. We can perceive no prejudice to defendant by the failure of the court to dismiss the first indictment. Furthermore, a motion by defendant to have the first bill dismissed would have come within the purview of G.S. 15A-952(a) and (b)(6), therefore, was subject to the procedure set forth in G.S. 15A-952(c). We hold that the court did not err in failing to dismiss the first indictment.

[3] Defendant contends next that the trial court erred in denying his motion for a mistrial based on a question pertaining to his past record asked defendant by the district attorney on cross-examination. This contention has no merit. In the first place, there is no showing that the district attorney did not ask the question in good faith. *See State v. Campbell*, 20 N.C. App. 281, 201 S.E. 2d 33 (1973). In the second place, we think any error was cured by the strong instruction given by His Honor to the jury

charging them not to consider for any purpose any inference from the question asked and to dismiss the same from their minds.

**[4]**    Finally, defendant contends the court erred in denying his motion "to challenge the array and quash the venire after it was discovered that the array of jurors chosen for the November session was switched and summoned to the October session, then switched back and resummoned to the November session". We find no merit in this contention.

The record discloses that defendant's case was calendared for trial on 17 November 1975; that sometime prior to 6 October 1975 the panel of jurors for the 17 November session was drawn; that pursuant to an order from Judge Ervin entered on 6 October, the jurors drawn for 17 November were notified to report instead for the 21 October session; that on 20 October these jurors were notified by radio, newspaper and other means that they would not be needed on 21 October; that several jurors who did not get the message appeared on 21 October but were told to leave and report back on 17 November; and that the entire panel of jurors was subsequently summoned to appear for the 17 November session.

Defendant argues (1) that once a juror is chosen and summoned for a specific week of court, that juror is qualified to serve only for that week; and (2) that the jurors having first been summoned for the October session are deemed to have served during that session and are not qualified to serve again for a period of two years.

**[5]**    Assuming, *arguendo*, that defendant's first argument is valid, the jurors did serve for the week that they were drawn, namely, the 17 November 1975 session. With respect to defendant's second argument, it is actual *service* as a juror rather than a mere summons for jury duty which disqualifies him for service for the next two years. G.S. 9-3.

In defendant's trial and the judgment appealed from, we find

No error.

Judges HEDRICK and WEBB concur.