**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

CHASE ROBERTSON NEVILLE,
Plaintiff-Appellant,

v.

GREAT LAKES AVIATION LIMITED,
d/b/a Northern Star Airlines,                    No. 97-2627
Defendant-Appellee,

and

MIDWAY AIRLINES CORPORATION,
Defendant.

Appeal from the United States District Court
for the District of South Carolina, at Charleston.
Patrick Michael Duffy, District Judge.
(CA-96-1980-2-11)

Argued: September 23, 1998

Decided: December 2, 1998

Before WILKINSON, Chief Judge, and HAMILTON and
MOTZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** George Trenholm Walker, PRATT-THOMAS, PEARCE,
EPTING & WALKER, P.A., Charleston, South Carolina, for Appel-

lant. Craig Burgess, NELSON, MULLINS, RILEY & SCARBOR-OUGH, L.L.P., Charleston, South Carolina, for Appellee. **ON BRIEF:** Richard B. Watson, NELSON, MULLINS, RILEY & SCARBOROUGH, L.L.P., Charleston, South Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Chase Robertson Neville, while exiting an airplane operated by Great Lakes Aviation, Ltd., slipped on the airplane's retractable stairs and severed her achilles tendon. She brought suit in the United States District Court for the District of South Carolina alleging negligence on the part of Great Lakes. The district court granted Great Lakes' motion for summary judgment, and Neville appeals. We affirm.

I.

On April 15, 1996, Neville boarded a Great Lakes commuter flight from Charleston to Raleigh-Durham. The aircraft had a retractable stairway built into the door of the plane. The stairs consisted of several steps covered with a non-slip surface and ringed with a slightly raised thin metal strip, or nosing. On either side of the stairs a cable served as a handhold. As Neville descended the plane's stairs, her left foot allegedly slipped on the metal nosing of the second or third step. She grabbed the right handhold to steady herself, but it gave slightly. Her left foot then slid down the left side of the stairs where it hit a latch, completely severing her Achilles tendon.

Neville filed a diversity tort action against Great Lakes in the United States District Court for the District of South Carolina. She alleged several hazardous conditions in the stairs and handhold of the airplane, that Great Lakes knew or should have known of these alleg-

2

edly hazardous conditions, and that Great Lakes failed to warn her of them. The district court granted Great Lakes' motion for summary judgment. It held that Neville produced insufficient evidence of a defect in the stairs and handhold. It further held that Great Lakes neither created any alleged defect nor had actual or constructive knowledge of such a defect, and therefore had no duty to correct it or warn Neville of it. Neville appeals.

II.

Both parties agree that, as the locus of the accident, North Carolina law applies. See Algie v. Algie, 198 S.E.2d 529 (S.C. 1973). Under North Carolina law, a common carrier owes its passengers "the highest degree of care for their safety so far as is consistent with the practical operations and conduct of its business." Mann v. Virginia Dare Transp. Co., 198 S.E.2d 558, 565 (N.C. 1973) (internal quotation marks omitted). Moreover, a common carrier has the duty to inspect its equipment and "where an accident results from a defect which might have been discovered by a proper test made by the carrier, it is liable therefor." Id. (internal quotation marks omitted). Nevertheless, a common carrier does not insure its passengers' safety and is liable only for negligence that proximately causes an injury. Id. Consequently, to hold a defendant liable for injury to its passengers, a plaintiff must demonstrate either: 1) that the defendant created the hazard that caused the injury; or 2) that the defendant failed to correct the hazard or warn of it after having received actual or constructive knowledge of its existence. Newton v. New Hanover County Bd. of Educ., 467 S.E.2d 58, 64 (N.C. 1996).

A.

Neville argues first that the district court misapplied North Carolina law by requiring her to show either that Great Lakes created the hazards of which she complains or had actual or constructive knowledge of them. Neville argues that this standard does not apply to common carriers. Instead, Neville claims that she may raise a jury question simply by showing that she was injured "by machinery and appliances wholly under the carrier's control." Humphries v. Queen City Coach Co., 45 S.E.2d 546, 548 (N.C. 1947). In essence, Neville argues that if she can show she was injured as a result of tripping on

3

the stairs of Great Lakes' aircraft, summary judgment is inappropriate.

Neville misreads North Carolina law. It is true that the North Carolina Supreme Court has held that "[i]n actions against common carriers, . . . when a passenger is injured by machinery and appliances wholly under the carrier's control, this fact is sufficient prima facie to show negligence." Id. But this rule is based on the doctrine of res ipsa loquitur. Saunders v. Norfolk & W. Ry. Co. , 117 S.E. 4, 5 (N.C. 1923). Consequently, it applies only when: 1) the object which injures the plaintiff is under the complete control of the defendant; and 2) the accident is one that does not normally occur absent negligence on the part of the defendant. Id. The rule does not alter the fact that the plaintiff's cause of action is based on negligence. Nor does it alter the more general rule that "[t]he inference of negligence arises, not from the fact of the injury, but from the circumstances under which it occurred." Id. at 6 (internal quotation marks omitted).

The facts of this case demonstrate the inapplicability of res ipsa loquitur. Tripping on the stairs of an airplane is simply not an event that results predominantly from an airline's negligence. Quite often, people trip as a result of their own inattentiveness. Neville's claim, therefore, may not benefit from the presumption that tripping normally occurs because of Great Lake's negligence, and her claim does not fall under the Humphries rule. Neville must demonstrate that a hazard exists and show that Great Lakes either created it, or had actual or constructive knowledge of it.

B.

Neville alleges that several characteristics of the aircraft's stairs constitute hazards. Specifically, Neville claims: 1) the riser height of the first and second stairs is non-uniform; 2) the stair width of the first and second stairs is non-uniform; 3) the metal nosing surrounding the stair tread is worn, slippery, and slightly elevated; and 4) the cable handhold is unstable.

We agree with the district court that Neville did not raise a genuine issue of material fact as to whether these characteristics are hazards. With the exception of Neville's claim that the metal nosing is worn

4

and slippery, each of the conditions she identifies is part of the design of the plane. Although common carriers are liable for design defects which they might have discovered with a proper inspection, Mann, 198 S.E.2d at 565, the design at issue must first be found defective. Under North Carolina law, to demonstrate a defective design, a plaintiff must show that the manufacturer failed in its duty to design a reasonably safe product. See Warren v. Colombo, 377 S.E.2d 249, 252 (N.C. App. 1989). Proving the product to be unreasonably unsafe typically requires a balancing of the risk and utility of the design. See City of Greenville v. W.R. Grace & Co., 827 F.2d 975, 979 (4th Cir. 1987).

Neville failed to introduce any evidence establishing that the risks inherent in the design of the plane's stairs and handhold outweighed its utility. She rested her claim predominantly on the testimony of her expert witness, Leonard Greene. Greene is a registered engineer with no experience in the design or construction of airplanes. He based his opinions on nothing more than his examination of the plane's stairs, the Journal of the National Academy of Forensic Engineers, a textbook entitled Forensic Engineering Reconstruction of Accidents, and the Southern Standard Building Code. None of these sources has any direct application to airplanes.

Nevertheless, Neville contends that Greene's testimony is sufficient to create a genuine issue of material fact for two reasons. First, Greene previously investigated other slip and fall cases involving building staircases and ladders. Second, she claims "[a] stair is a stair is a stair." Neither of these arguments is adequate. Greene's investigation of slip and fall cases concerning building staircases and ladders simply has nothing to do with whether the risks inherent in the design of these aircraft stairs outweigh its utility. For the same reason, an assertion that a stair is a stair is a stair is insufficient to demonstrate a defective design. Indeed, the balancing standard applicable to design defects rests upon a realization that design requirements may differ for various products. As the district court noted, the stairs in this case were part of the door of the plane and had to be designed with the performance of the entire aircraft in mind. As such, the stairs undoubtedly were subject to certain size, weight, and material limitations -- limitations about which Greene was unable to supply an opinion. Without that opinion, Neville cannot establish a genuine

5

issue of material fact concerning the allegedly hazardous nature of the riser heights, stair widths, nosing elevation, and handhold stability.

We turn finally to Neville's claim that the metal nosing that surrounds each stair is worn and slippery. Although this claim does not rest on the design of the aircraft's stairs, it also fails. Neville's own expert witness testified that he had no reason to believe that Great Lakes had negligently maintained the aircraft's stairs. Moreover, Neville's claim is nearly identical to one found insufficient in Hedgepeth v. Rose's Stores, 251 S.E.2d 894 (N.C. App. 1979). In Hedgepeth, as in this case, the plaintiff alleged that she slipped on stairs that were ringed by a thin metal strip. The only evidence the plaintiff introduced as to the condition of the stairs was that they were "worn" and "very slippery." Id. at 896. She too was unable to determine the exact stair on which she slipped. Moreover, she was unable to provide any evidence that the stairs on which she might have slipped were any different from any other stair in the flight. The court held that evidence that the steps were "worn" or "very slick," without evidence of the particular defective condition that caused her fall, was insufficient "to support a finding by the jury that the steps had become so worn that their use would be hazardous." Id. For the same reason, Neville's evidence is insufficient here.

C.

Neville argues that Great Lakes violated its duty to correct these alleged defects and hazards, or to warn her of them, after it had constructive knowledge that they existed. See Newton, 467 S.E.2d at 64. However, as noted, there are no hazards that Great Lakes had a duty to correct or about which it needed to warn. We thus affirm the judgment of the district court.

AFFIRMED

6